IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| DONALD J. TRUMP, *et al.*, | ) ) ) |
| Defendants. | ) |

No. 1:25-cv-00420-CRC

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs National Treasury Employees Union (NTEU), National Federation of Federal Employees (NFFE), International Association of Machinists and Aerospace Workers (IAM), International Federation of Professional and Technical Engineers (IFPTE), and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) (collectively, the Unions) respectfully submit this reply to the government's response to their motion for a temporary restraining order and preliminary injunctive relief.

## ARGUMENT

1.  **Standing.** The government is incorrect that the loss of dues revenue arising out of the challenged Executive actions is speculative. *See* Def.'s Resp. at 10-11. Over the last week, through the administration's implementation of Executive Order No. 14210 (the Workforce Order) and the administration's mass firing of probationary employees, Plaintiff NTEU has had approximately 1,250-1,500 dues-paying members terminated. Supplemental Declaration of Daniel Kaspar

(Suppl. Kaspar Decl.) ¶ 8 (Ex. 1). That number will increase substantially this week. The Internal Revenue Service (IRS) is expected to fire thousands of probationary employees by Friday, and the Federal Deposit Insurance Corporation (FDIC) is expected to terminate scores of probationary employees today. *Id.* ¶ 6. Dues payments for effectively all NTEU members who have been terminated will stop with their final paycheck. *Id.* ¶ 9.

And as to its estimates of future losses of dues revenue, Plaintiff NTEU is basing its projection on the government's own lapse in appropriations plans and NTEU membership data. *See* Kaspar Decl. (Unions' Mem., Ex. 1) ¶¶ 6-12; Gray Decl. (Unions' Mem., Ex. 2) ¶¶ 4-13. Those projections are not speculative; they have data support and assume only that the President's Workforce Order and the Office of Personnel Management's (OPM) directive to fire probationary employees, respectively, will continue to be followed.

The parallel loss in bargaining power as the Unions' membership drops is itself sufficient for standing. *See NTEU v. Chertoff*, 452 F.3d 839, 854 (D.C. Cir. 2006) (holding that "harm to [the Unions'] bargaining position" was "certainly a real injury" for purposes of standing).

    2.    <u>Ripeness.</u>  The three actions that the Unions challenge are ripe for review because they are currently underway and are already causing harm.

    a.    The government's one-paragraph ripeness argument (Def.'s Resp. at 17) completely ignores one of the three actions that Unions challenge: the mass firing of probationary employees that is already occurring. As noted in the

memorandum accompanying the Unions' motion, the Consumer Financial Protection Bureau (CFPB) fired its probationary employees on February 11. Unions' Mem. at 5. More indiscriminate terminations of probationary employees have happened since then at, for example, the Food and Drug Administration, the Department of Energy, Health and Human Services (beyond its FDA operating division), the Bureau of Land Management, the Environmental Protection Agency, the National Park Service, and the Food and Nutrition Service. Suppl. Kaspar Decl. ¶¶ 4-5. In addition to the terminations that have already happened, a mass firing of thousands of probationary employees is imminent at IRS, with additional firings of probationary employees expected at FDIC today. Suppl. Kaspar Decl. ¶ 6.

  b. While ignoring mass firings of thousands of probationary employees, the government trains most of its attention on the ripeness of the Unions' challenge to the Workforce Order. Contrary to the government's argument, agencies are already citing the Workforce Order for employee terminations. For example, when the CFPB fired more than seventy term employees on February 13, their termination notices state, "your employment will be terminated effective at the close of business on February 13, 2025, due to Executive Order Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative – The White House dated February 11, 2025." Suppl. Kaspar Decl. ¶ 7. So, while the government notes that section 3(c) of the Workforce Order directs agencies to "promptly undertake preparations to initiate large-scale [RIFs], consistent with applicable law[,]" agencies have understood the Order as an

3

immediate, unqualified command. Later in its response, the government also suggests that the Order commands action: it argues that a temporary restraining order would affect the President's determination that "his agencies should take steps to streamline" the workforce, including through RIFs. Def.'s Resp. at 21.

      c.      Because mass firings of probationary employees and RIFs under the Workforce Order have already occurred, injury from these actions is far from speculative. NTEU, for example, has had approximately 1,250-1,500 dues-paying members terminated in these actions to date. Suppl. Kaspar Decl. ¶ 8. As a result, a loss of more than half a million dollars in dues revenue is definite and imminent. *Id.*

      d.      The third challenged action, the deferred resignation program, has already concluded and is certain to cause the Unions harm. Dues-paying members of the Unions have already opted into the program. Erwin Decl. (Unions' Mem., Ex. 4) ¶ 12; Biggs Decl. (Unions' Mem., Ex. 5) ¶ 11; Norman Decl. (Unions' Mem., Ex. 6) ¶ 7. Thus, the Unions are certain to incur a loss of dues revenue as a result.

      3.      **Channeling.** The government does not engage with the Unions' application of the *Thunder Basin* framework. *Compare* Def.'s Resp. at 14-16 (government's *Thunder Basin* analysis), *with* Unions' Mem. at 19-25 (Unions' *Thunder Basin* analysis). The government cannot dispute that the Unions would suffer irremediable harm from the delays associated with channeling in two ways: the loss of revenue that they will never get back and a loss of bargaining power that will affect their influence in agency workplaces.

4

This irremediable harm—in Plaintiff NTEU's case, an estimated loss of about half its dues revenue and half of the workers that it represents—would deprive the Unions of meaningful judicial review and renders their claims wholly collateral to the administrative scheme. Unions' Mem. at 19-25. Even if every single dues-paying NTEU member who is affected by the three Executive Branch actions at issue in this case ultimately gets their job back, NTEU will never recover the dues revenue that was lost when those employees were out of the federal service. Suppl. Kaspar Decl. ¶ 10.[1]

4. **Separation of Powers.** The government's arguments that the Unions' separation of powers claim is unlikely to succeed is based on a mischaracterization of the claim and a misstatement of fact. The Unions are not arguing that the President has exceeded his statutory authority (*see* Def.'s Resp. at 17-20); the Unions are instead arguing that the President is exceeding his constitutional authority through his decimation of the federal agencies that Congress created, to which Congress assigned statutory missions, and that Congress funded so that they could accomplish those statutory objectives. *See* Unions' Mem. at 8-12.

And the government is wrong that the Executive did not "rely on" the Constitution "as an independent source of authority" here. *See* Def.'s Resp. at 18. In the first sentence of the Workforce Order, for example, the President explicitly

---

[1] The Unions' irreparable harm arguments mirror their channeling arguments. *See* Unions' Mem. at 26-28.

invokes "the authority vested in [him] as President by the Constitution and the laws of the United States of America."

The government otherwise refuses to engage with the Unions' claim—even though, in the last four days, federal district courts have concluded that two other Executive Orders from this administration violate separation of powers principles.[2]

5.  **APA claim.** Contrary to the government's arguments (*see* Def.'s Resp. at 18-19), the Workforce Order's "consistent with applicable law" language does not cure the Order's fundamental inconsistencies with the RIF statute and regulations. Because the Order directs agencies to conduct RIFs in a manner contrary to law, the "consistent with applicable law" language "effectively would nullify judicial review of the Order's substance." *HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021); *see also City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018) ("If 'consistent with law' precludes a court from examining whether the Executive Order is consistent with law, judicial review is a meaningless exercise"). Courts "reject" such "attempt[s] to immunize [an executive] [o]rder from review through a savings clause which, if operational, would nullify the 'clear and specific'

---

[2] On February 14, a federal district court analyzed a "straightforward question regarding the separation of powers" and granted a temporary restraining order against sections of two Executive Orders that impermissibly placed conditions on federal grants. *See PFLAG, Inc. v. Trump*, No. 25-337-BAH, 2025 U.S. Dist. LEXIS 26702, at *3, *28 (D. Md. Feb. 14, 2025). Two days later, another federal district court granted a temporary restraining order against sections in one of those same Executive Orders based on a separation of powers argument. *Washington v. Trump*, No. 2:25-cv-00244-LK, 2025 U.S. Dist. LEXIS 27592, at *24 (W.D. Wa. Feb. 16, 2025) (explaining that "the President's duty to enforce the laws necessarily extends to appropriations" and his failure to enforce those laws "may be an abdication of the President's constitutional role").

substantive provisions of the Order." *HIAS, Inc.*, 985 F.3d at 325 (citing *City & Cnty. of S.F.*, 897 F.3d at 1239).

*Building & Construction Trades Department v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002), is not to the contrary. There, the D.C. Circuit rejected the plaintiffs' argument that, "notwithstanding the President's instruction that the Executive Order be applied only 'to the extent permitted by law,' a particular agency may try to give effect to the Executive Order when to do so is inconsistent with the relevant funding statute.'" *Allbaugh*, 295 F.3d at 33. The court reasoned that the unlawful agency action that plaintiffs feared was a "mere possibility." *Id.*

But here, as in *City and County of San Francisco*, "the Executive Order unambiguously commands action." 897 F.3d at 1240. Not a "mere possibility," *Allbaugh*, 295 F.3d at 33, agencies are unquestionably following the Workforce Order's command and are terminating probationary and other employees en masse without following the statutorily required RIF procedures. *See* Suppl. Kaspar Decl. ¶¶ 4-7. Thus, the Order's "consistent with law" language has no bearing on the APA claim's likelihood of success on the merits.

6. <u>Equities and Scope of Relief.</u> It is specious for the government to argue that employees "may not want [the] relief" that the Unions seek—in other words, that they might instead want the government's purge of nonessential workers and probationary employees to continue. *See* Def.'s Resp. at 21. Neither the equities nor the public interest favor allowing the government to proceed with hundreds of

thousands of terminations that will injure the Unions in ways that cannot be undone. *See* Unions' Mem. at 20-24 (describing irremediable harm).

This Court should freeze the status quo to avoid irreparable harm to the Unions. Doing so would be consistent with Judge Jackson's recent order in a case involving the dismantling of the CFPB; there, Judge Jackson endorsed the parties' agreement that, pending resolution of a motion for preliminary injunction, the government "shall not terminate any CFPB employee, except for cause related to the specific employee's performance or conduct; nor shall [the government] issue any notice of reduction-in-force to any CFPB employee." *See* Order at 2, *NTEU v. Vought*, No. 1:25-cv-00381-ABJ (Feb. 14, 2025), ECF No. 19.

Any relief that this Court orders, moreover, should apply nationwide. If this Court concludes that the Unions have shown a likelihood of success on the merits, the government should honor that ruling and halt the challenged actions across the government. *Cf. Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (explaining that, with respect to Executive Branch officials, a "declaratory judgment is the functional equivalent of an injunction" because it is "presumed that officials of the Executive Branch will adhere to the law as declared by the court").

## CONCLUSION

For the foregoing reasons and those contained in their motion and accompanying memorandum of points and authorities, the Unions ask this Court to grant the temporary and preliminary relief set forth in the proposed order filed with their motion.

Respectfully submitted,

/s/ Julie M. Wilson

_____

JULIE M. WILSON
General Counsel
D.C. Bar No. 482946

/s/ Paras N. Shah

_____

PARAS N. SHAH
Deputy General Counsel
D.C. Bar No. 983881

/s/ William Li

_____

WILLIAM LI
Associate General Counsel
D.C. Bar No. 1006366

/s/ Allison C. Giles

_____

ALLISON C. GILES
Assistant Counsel
D.C. Bar No. 439705

/s/ Jessica Horne

_____

JESSICA HORNE
Assistant Counsel
D.C. Bar No. 1029732

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street, N.W., Suite 1000
Washington, D.C. 20001
Tel: (202) 572-5500
julie.wilson@nteu.org
william.li@nteu.org
paras.shah@nteu.org
allie.giles@nteu.org
jessica.horne@nteu.org

Attorneys for Plaintiff NTEU

/s/ Yvette M. Piacsek
_____

YVETTE M. PIACSEK
General Counsel
D.C. Bar No. 980302

NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, IAM, AFL-CIO
1225 New York Avenue N.W., Suite 450
Washington, D.C. 20005
Tel: 202-216-4428
ypiacsek@nffe.org

Attorney for Plaintiff NFFE


/s/ Carla M. Siegel
_____

CARLA M. SIEGEL
General Counsel
D.C. Bar No. 449953

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO
9000 Machinists Place
Upper Marlboro, MD 20772
Tel: 301-967-4510
csiegel@iamaw.org

Attorney for Plaintiff IAM

/s/ Teresa Ellis

_____

TERESA ELLIS (admission pending)
General Counsel
D.C. Bar No. 495855

INTERNATIONAL FEDERATION OF
PROFESSIONAL & TECHNICAL
ENGINEERS, AFL-CIO
513 C Street N.E.
Washington, D.C. 20002
Tel: (202) 239-4880
tellis@ifpte.org

Attorney for Plaintiff IFPTE


/s/ Joshua B. Shiffrin

_____

Joshua B. Shiffrin
D.C. Bar No. 501008
Bredhoff & Kaiser P.L.L.C.
805 15th Street N.W.
Suite 1000
Washington D.C. 20005
Tel: (202) 842-2600
jshiffrin@bredhoff.com

February 18, 2025                Attorney for Plaintiff UAW