## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, ) <br> 800 K Street N.W., Suite 1000 ) <br> Washington, D.C. 20001, ) <br> ) <br> NATIONAL FEDERATION OF ) <br> FEDERAL EMPLOYEES, AFL-CIO, ) <br> 1225 New York Avenue N.W., Suite 450 ) <br> Washington, D.C. 20005, ) <br> ) <br> INTERNATIONAL ASSOCIATION OF ) <br> MACHINISTS AND AEROSPACE WORKERS, ) <br> AFL-CIO, ) <br> 9000 Machinists Place ) <br> Upper Marlboro, MD 20772, and ) <br> ) <br> INTERNATIONAL FEDERATION OF ) <br> PROFESSIONAL & TECHNICAL ) <br> ENGINEERS, AFL-CIO, ) <br> 513 C Street N.E. ) <br> Washington, D.C. 20002, ) <br> ) <br>      Plaintiffs, ) <br> ) <br>      v. ) <br> ) <br> DONALD J. TRUMP, ) <br> President of the United States ) <br> 1600 Pennsylvania Avenue N.W. ) <br> Washington, D.C. 20035, ) | Case No.  1:25-cv-420 (CRC) <br><br> SECOND AMENDED <br> COMPLAINT FOR <br> DECLARATORY AND <br> INJUNCTIVE RELIEF |

CHARLES EZELL,                                          )
Acting Director,                                        )
Office of Personnel Management                          )
1900 E Street N.W.                                      )
Washington, D.C. 20415,                                 )
                                                        )
RUSSELL VOUGHT, Director                                )
Office of Management and Budget                         )
1700 G Street N.W.                                      )
Washington, D.C. 20552,                                 )
                                                        )
MICHAEL FAULKENDER,                                     )
Acting Commissioner, Internal Revenue Service           )
U.S. Department of Treasury                             )
1500 Pennsylvania Avenue N.W.                           )
Washington, D.C. 20220,                                 )
                                                        )
ROBERT F. KENNEDY, JR., Secretary                       )
U.S. Department of Health and                           )
Human Services                                          )
200 Independence Avenue S.W.                            )
Washington, D.C. 20201,                                 )
                                                        )
RUSSELL VOUGHT, Acting Director,                        )
Consumer Financial Protection Bureau,                   )
1700 G Street N.W.                                      )
Washington, D.C. 20552                                  )
                                                        )
TOM SCHULTZ, Chief,                                     )
U.S. Forest Service                                     )
U.S. Department of Agriculture                          )
1400 Independence Avenue S.W.                           )
Washington, D.C. 20250,                                 )
                                                        )
DOUG COLLINS, Secretary                                 )
Department of Veterans Affairs                          )
810 Vermont Avenue N.W.                                 )
Washington, D.C. 20420,                                 )
                                                        )
PETE HEGSETH, Secretary                                 )
Department of Defense                                   )
1000 Defense Pentagon                                   )
Washington, D.C. 20301-1000,                            )
                                                        )

MAKENZIE LYSTRUP, Director,                                    )
Goddard Space Flight Center                                    )
National Aeronautics and Space Administration  )
8800 Greenbelt Road                                            )
Greenbelt, MD 20771,                                           )
                                                               )
WILLIAM J. PULTE, Director,                                    )
Federal Housing Finance Agency                                 )
Constitution Center                                            )
400 7th Street S.W.                                            )
Washington, D.C. 20219,                                        )
                                                               )
CAROLINE D. PHAM, Acting Chairman                              )
Commodity Futures Trading Commission                           )
Three Lafayette Centre                                         )
1155 21st Street N.W.                                          )
Washington, D.C. 20581,                                        )
                                                               )
ANDREW N. FERGUSON, Chairman                                   )
Federal Trade Commission                                       )
600 Pennsylvania Avenue N.W.                                   )
Washington, D.C. 20580,                                        )
                                                               )
TRAVIS HILL, Acting Chairman                                   )
Federal Deposit Insurance Corporation                          )
550 17th Street N.W.                                           )
Washington, D.C. 20429, and                                    )
                                                               )
DOUG BURGUM, Secretary                                         )
Department of the Interior                                      )
1849 C Street N.W.                                             )
Washington, D.C. 20240,                                        )
                                                               )
                        Defendants.                            )
_____  )

## SECOND AMENDED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

### INRODUCTION

Plaintiffs National Treasury Employees Union (NTEU), National Federation

of Federal Employees (NFFE), International Association of Machinists and

3

Aerospace Workers (IAM), and International Federation of Professional and Technical Engineers (IFPTE) (collectively, the Unions) represent hundreds of thousands of employees in dozens of federal agencies and departments across the nation.

The Unions bring this action to protect the workers they represent from the Executive Branch's attempts to dismantle the federal government through the mass firings of hundreds of thousands of employees (those who are considered "nonessential" for purposes of a government shutdown and those who are in probationary status) and a pressure campaign on federal workers to quit their jobs through "deferred resignation programs."

Congress creates our federal agencies, assigns their missions, and funds their work, including their workforce. The Executive Branch's actions to decimate that workforce conflict with Congress's role in establishing that workforce and its respective portfolio of work and thus violate separation of powers principles. The mass firing of employees will also violate the Administrative Procedure Act (APA).

## JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff NTEU is an unincorporated association with its principal place of business at 800 K Street, N.W., Washington, D.C. 20001. NTEU is,

pursuant to Title VII of the Civil Service Reform Act, Public Law No. 95-454, 92
Stat. 1111, the exclusive bargaining representative of employees in thirty-seven
federal departments and agencies.

4.      Plaintiff NFFE is an affiliate of IAM and is an unincorporated
association with its principal place of business at 1225 New York Ave. N.W., Suite
450, Washington, D.C. 20005. It is the exclusive bargaining representative of
approximately 110,000 employees in agencies across the federal government.

5.      Plaintiff IAM is an unincorporated association with its principal place
of business at 9000 Machinists Place, Upper Marlboro, MD 20772. IAM is the
exclusive bargaining representative of approximately 600,000 members across
North America, with approximately 15,000 employees in agencies across the federal
government.

6.      Plaintiff IFPTE is an unincorporated association with its principal
place of business at 513 C St. N.E., Washington, D.C. 20002. IFPTE is the exclusive
representative for approximately 34,000 professional and technical employees
throughout the federal government.

7.      The Unions negotiate collective bargaining agreements on behalf of the
employees that they represent and enforce employees' collective and individual
rights in grievances and in federal courts.

8.      Defendant Donald J. Trump is the President of the United States of
America. On February 11, 2025, he issued an Executive Order that directs agencies
to promptly undertake mass firings through reductions-in-force (RIFs). Executive

5

Order No. 14210, *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative* (Feb. 11, 2025).

9.     Defendant Charles Ezell is the Acting Director of the United States Office of Personnel Management (OPM). OPM, and thus Defendant Ezell, has implemented and guided federal agencies' mass firing of employees and OPM's deferred resignation program.

10.     Defendant Russell Vought is the Director of the Office of Management and Budget (OMB). OMB, and thus Defendant Vought, has implemented and guided federal agencies' mass firing of employees.

11.     Defendant Michael Faulkender is the Acting Commissioner of the Internal Revenue Service (IRS). The IRS employs more dues-paying NTEU members than any other federal agency or department. As the head of the IRS, Defendant Faulkender is responsible for implementing the actions described in this complaint within that agency.

12.     Defendant Robert F. Kennedy, Jr., is the Secretary of the Department of Health and Human Services (HHS). HHS employs the third largest number of dues-paying NTEU members. As the head of HHS, Defendant Kennedy is responsible for implementing the actions described in this complaint within that agency.

13.     Defendant Russell Vought is the Acting Director of the Consumer Financial Protection Bureau (CFPB). The CFPB employs dues-paying NTEU members. As head of the CFPB, Defendant Vought is responsible for implementing

the actions described in this complaint within that agency.

14.     Defendant Tom Schultz is the Chief of the U.S. Forest Service within the U.S. Department of Agriculture. NFFE represents 18,080 employees within the Forest Service. As the head of the Forest Service, Defendant Schulz is responsible for implementing the actions described in this complaint within that agency.

15.     Defendant Doug Collins is the Secretary of the Department of Veterans Affairs (VA). NFFE represents approximately 10,000 employees within the VA. As the head of the VA, Defendant Collins is responsible for implementing the actions described in this complaint within that agency.

16.     Defendant Pete Hegseth is the Secretary of the Department of Defense (DoD). NFFE and IAM together represent approximately 53,000 employees within the DoD. As the head of the DoD, Defendant Hegseth is responsible for implementing the actions described in this complaint within that agency.

17.     Defendant Makenzie Lystrup is the Director of Goddard Space Flight Center, National Aeronautics and Space Administration. IFPTE represents close to 2,000 employees at the Goddard Space Flight Center. Defendant Lystrup is responsible for implementing the actions described in this complaint within the Goddard Space Flight Center.

18.     Defendant William J. Pulte is the Director of the Federal Housing Finance Agency (FHFA). FHFA employs dues-paying NTEU members. As the head of FHFA, Defendant Pulte is responsible for implementing the actions described in this complaint within that agency.

19.     Defendant Caroline D. Pham is the Acting Chairman of the
Commodity Futures Trading Commission (CFTC). CFTC employes dues-paying
NTEU members. Defendant Pham is responsible for implementing the actions
described in this complaint within that agency.

20.     Defendant Andrew N. Ferguson is the Chairman of the Federal Trade
Commission. FTC employs dues-paying NTEU members. Defendant Ferguson is
responsible for implementing the actions described in this complaint within that
agency.

21.     Defendant Travis Hill is the Acting Chairman of the Federal Deposit
Insurance Corporation (FDIC) Board of Directors. FDIC employs dues-paying
NTEU members. Defendant Hill is responsible for implementing the actions
described in this complaint within that agency.

22.     Defendant Doug Burgum is the Secretary of the Department of the
Interior (Interior). Interior employs dues-paying NTEU members. Defendant
Burgum is responsible for implementing the actions described in this complaint
within that agency.

## STATEMENT OF CLAIMS

### I.    Congress's Significant Power to Shape the Executive Branch

#### A.    Congress's Plenary Authority over the Existence, Mission, and Funding of Executive Agencies

23.     The Framers intended for Congress to be the most powerful branch of
the federal government. The legislative power that the Founders envisioned

"necessarily predominates" (The Federalist No. 51 (J. Madison)) and has a "tendency . . . to absorb every other" (The Federalist No. 71 (A. Hamilton)).

24.    Congress can create or destroy executive branch agencies and dictate their missions. "To Congress under its legislative power is given the establishment of offices ... [and] the determination of their functions and jurisdiction." *Myers v. United States*, 272 U.S. 52, 129 (1926). *Accord Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (discussing Congress's ability to create or remove federal agencies through the Necessary & Proper Clause). Congress thus "control[s]" the very "existence of executive offices." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 500 (2010).

25.    Congress, moreover, has the power to fund or defund executive branch agencies—and, in exercising that power, determines whether and how agencies may function. The Antideficiency Act, 31 U.S.C. § 1341, which generally prohibits the executive branch from incurring obligations that Congress has not authorized, and the Impoundment Control Act, 2 U.S.C. §§ 681-688, which prevents the Executive from refusing to postpone or withhold the use of appropriated funds, illustrate this. Thus, while the President is responsible for the enforcement of federal laws, Congress alone has the power of the purse with which to fund or defund agencies and their activities.

26.    Historically, when Presidents have reorganized the executive branch, they have always done so pursuant to congressional delegations of authority in Reorganization Acts. *See, e.g.*, 5 U.S.C. §§ 901-12.

27.     "Between 1932 and 1984, presidents submitted 126 reorganization proposals to Congress, of which 93 were implemented and 33 were affirmatively rejected by Congress." S. Rep. No. 115-381, at 4 (2018). The most recent statutory authorization for a president to reorganize the executive branch expired December 31, 1984. Henry B. Hogue, Cong. Rsch. Serv., R44909, *Executive Branch Reorganization* 6-7 & n.23 (2017). Congress denied approval for reorganizations to Presidents George W. Bush and Barack Obama. *Id.* at 7.

28.     Indeed, Congress also denied Defendant Trump authorization to conduct a large-scale reorganization in his first term. In 2017, he issued Executive Order 13781, entitled, "Comprehensive Plan for Reorganizing the Executive Branch," 82 Fed. Reg. 13,959 (Mar. 16, 2017). This Order directed agencies to submit plans within 180 days "to reorganize the agency, if appropriate, in order to improve the efficiency, effectiveness, and accountability of that agency." The plan failed, however, because Congress did not pass accompanying legislation. *See* H.R. 6787, 115th Congress (2017-2018); S. 3137, 115th Congress (2018).

29.     These examples from history—including from Defendant Trump's own first term—show that presidents do not have the power unilaterally to conduct the large-scale restructuring of federal agencies that the Administration is carrying out in Executive Order No. 14210.

B.     **The Inflation Reduction Act as an Example of Congress Building Up an Executive Branch Agency to Facilitate Its Statutory Mission**

30.     The Inflation Reduction Act (IRA), Public Law 117-169, is a strong example of Congress consciously giving a federal agency a resource boost so that it

could better meet its statutory mission. Congress passed the IRA in 2022 after the IRS workforce had shrunk to its smallest size since the 1970s.

31.     The IRA authorized approximately $80 billion to the IRS over ten years, although Congress later rescinded half of that amount. The IRA required that the funding go to designated purposes, namely improving tax law enforcement, operations support, business systems modernization, and taxpayer services.

32.     IRS has used this IRA funding to hire thousands of new employees, many of whom are in probationary status. IRS has an estimated 15,000 probationary employees today, many of whom were hired through IRA funds.

33.     For example, IRS has rapidly hired thousands of additional employees to carry out Congress's mandate to improve taxpayer service. *See* Congressional Research Service, *The Internal Revenue Service's Strategic Operating Plan* (June 2, 2023), https://crsreports.congress.gov/product/pdf/IF/IF12394 (agency responded to more taxpayer calls "thanks to the hiring of 5,000 customer service representatives using IRA funds"); U.S. Department of Treasury, *Continuing Improvements to IRS Customer Service in Filing Season 2024* (June 7, 2024), https://home.treasury.gov (IRA funding has made thousands of new hires possible).

34.     Without these thousands of employees, Congress's intent through the IRA to improve tax enforcement and taxpayer services, among other things, would be thwarted.

35.     The IRA is just one example. Each year, Congress appropriates funds for other executive branch agencies such as HHS, the Forest Service, the VA, DoD,

Goddard Space Flight Center, FHFA, CFTC, FTC, FDIC and Interior, and directs them to carry out their statutorily mandated responsibilities.

## II. The Trump Administration's Attempts to Dismantle the Executive Branch Agencies that Congress Created, Assigned Duties, and Funded

36.     In recent months, Executive actions have targeted the federal civilian workforce in a way that attempts to stymie the statutory mission of their federal agencies. These actions, collectively, usurp Congress's authority to create agencies and to empower those agencies to do the work that Congress has asked them to do.

37.     The Executive Branch acting as the "woodchipper for [the federal] bureaucracy" conflicts with Congress's role as the creator, funder, and mission-setter for the executive branch agencies. Holly Otterbein, *Musk aims to hobble federal workers ahead of 'buyout' deadline*, Politico.com, https://www.politico.com/news/2025/02/06/federal-workers-musk-buyout-fears-00202768. The actions described below, cumulatively, violate separation of powers principles.

### A. The Order's Instructions to Fire Hundreds of Thousands of Federal Employees En Masse

38.     The Order, sec. 3(c), directs agencies to "promptly undertake preparations to initiate large-scale reductions in force."

39.     The Order, sec. 3(c), directs agencies to separate temporary employees and reemployed annuitants "working in areas that will likely be subject to the RIFs."

40.    The Order, sec. 3(c), then directs agencies to prioritize in the RIFs "all agency diversity, equity and inclusion initiatives; all agency initiatives, components, or operations that my Administration suspends or closes; and employees performing functions not mandated by statute or other law who are not typically designated as essential during a lapse in appropriations[.]"

41.    During the last major shutdown, approximately 345,000 employees were not designated as essential. Eric Katz, *See Who Would Get Furloughed in a Shutdown This Year* (Sept. 22, 2023),

https://www.govexec.com/workforce/2023/09/see-who-would-get-furloughed-shutdown-year/390517/.

42.    It is unknown how many employees work in the Order's vaguely defined category of "initiatives, components or operations" that the Administration "suspends or closes."

43.    NTEU represents thousands of employees who were designated as nonessential during the last shutdown and who would be prioritized in a RIF under the Order.

44.    The IRS FY2025 Lapsed Appropriations Contingency Plan designates different numbers of employees who would continue to work during a shutdown depending on whether the shutdown occurs during tax Filing Season (January 1 through April 30) or Non-Filing season. Internal Revenue Service, Fiscal Year 2025 Lapsed Appropriations Contingency Plan (July 22, 2024),

https://home.treasury.gov/system/files/266/IRS-FY24LapsePlan.pdf.

45.    During Filing Season, 53,782 of the 96,952 IRS employees on board as of the date of the plan (55.5%) are considered nonessential. During Non-Filing season, that number rises to 67,428 (69.5%). *Id.*

46.    The FY 2025 HHS Contingency Staffing Plan designates 40,887 of the 91,649 total onboard staff (45%) as nonessential. U.S. Department of Health and Human Services, FY 2025 HHS Contingency Staffing Plan, https://www.hhs.gov/about/budget/fy-2025-hhs-contingency-staffing-plan/index.html.

47.    NFFE, IAM, and IFPTE also collectively represent thousands of employees who were not designated as essential during the last shutdown.

48.    On February 26, 2025, Defendant Vought, in his capacity as Director of OMB, along with Defendant Ezell, issued a Memorandum instructing agency heads to submit Agency RIF and Reorganization Plans (ARRPs) to OMB and OPM "for review and approval." Memorandum to Heads of Executive Departments and Agencies from Russell T. Vought & Charles Ezell Re: Guidance on Agency RIF and Reorganization Plans Requested by *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiati*ve (Feb. 26, 2025) (Memo), https://www.opm.gov/policy-data-oversight/latest-and-other-highlighted-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf.

49.     The Memo directed agencies to submit Phase 1 Agency ARRPs by March 13, 2025, that included, among other information, any statutes that established the agency, a list of employees "not typically designated as essential during a lapse in appropriations," whether parts of the agency should be eliminated or consolidated, a "suggested plan for congressional engagement to gather input and agreement on major restructuring efforts," and the agency's timeline for implementation. Memo at 3-4.

50.     The Memo directed agencies to submit Phase 2 ARRPs by April 14, 2025, that included, among other information, proposed relocations of offices from the Washington, D.C. area to "less-costly parts of the country," the competitive areas for subsequent large-scale RIFs, "[a]n explanation of how the ARRPs will improve services for Americans and advance the President's policy priorities," "justification" for any programs' or components' exclusion from the ARRP, and a timetable for implementation. Memo at 4-5.

51.     The Memo requires agencies to send monthly progress reports on May 14, June 16, and July 16, 2025. Memo at 6.

### B.     Mass Firings that Have Occurred Under the Order

52.     Mass firings have occurred pursuant to the Order, including at each Defendant agency where NTEU represents employees. Dues-paying members of NTEU and IFPTE have received termination notices as part of those mass firings.

53.     On February 13, the CFPB began issuing termination notices to over seventy term employees, including dues-paying NTEU members. The termination notices rely on the President's Order, stating: "your employment will be terminated

effective at the close of business on February 13, 2025, due to Executive Order Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative – The White House dated February 11, 2025."

54.    In a press release on March 27, 2025, HHS "announced a dramatic restructuring in accordance with President Trump's Executive Order, 'Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative.'" Press Release, U.S. Dep't of Health and Human Servs., HHS Announces Transformation to Make America Healthy Again, https://www.hhs.gov/press-room/hhs-restructuring-doge.html. This restructuring involves "a reduction in workforce of about 10,000 full-time employees." *Id.* Further, "[w]hen combined with HHS' other efforts, including early retirement and Fork in the Road, the restructuring results in a total downsizing from 82,000 to 62,000 full-time employees." *Id.*

55.    A Fact Sheet accompanying the press release noted that "FDA will decrease its workforce by approximately 3,500 full-time employees"; "[t]he CDC will decrease its workforce by approximately 2,400 employees"; and the Centers for Medicare & Medicaid Services (CMS) "will decrease its workforce by approximately 300 employees." Fact Sheet: HHS' Transformation to Make America Healthy Again, https://www.hhs.gov/press-room/hhs-restructuring-doge-fact-sheet.html (last updated Apr. 2, 2025).

56.    Also on March 27, 2025, HHS sent NTEU formal notification that it will be implementing a RIF of employees across HHS. It estimated that 8,000 to

16

10,000 would be affected and listed May 27, 2025, as the probable effective date. It noted that this action was being taken in accordance with President Donald Trump's Executive Order 14210, dated February 11, 2025.

57.    On March 29, 2025, NTEU received another notice about the planned RIF at HHS in accordance with Executive Order 14210. The notice estimated that 2,482 employees would be affected, with a proposed effective date of May 28, 2025. It listed 413 department ID codes as the competitive areas initially affected and noted that the RIF would affect all employees in those competitive areas.

58.    HHS began sending notices of termination to thousands of HHS employees on April 1, 2025. Rob Stein, et al., NPR, *Widespread Firings Start at Federal Health Agencies Including Many in Leadership*, https://www.npr.org/sections/shots-health-news/2025/04/01/g-s1-57485/hhs-fda-layoffs-doge-cdc-nih (Apr. 1, 2025 1:25 PM).

59.    In a briefing on April 11, HHS told NTEU that 2,453 NTEU bargaining unit employees received a RIF notification letter.

60.    HHS's RIF notices have been riddled with errors. In a survey of NTEU members, 800 NTEU members responded as of April 7, 2025, indicating that they have received a RIF notice. More than 76% indicated that their RIF notice listed incorrect retention standing information. Over 95% said that the scores listed for their most recent performance ratings were wrong. Over 50% specified that their additional years of credit based on performance ratings was inaccurate.

17

61.     Defendant Kennedy admitted that about a fifth of the firings were "mistakes." Rob Stein, et al., *"Your RIF Notice Is Not Cancelled." Inside a Chaotic Week of Massive Layoffs at HHS*, NPR (Apr. 5, 2025, 5:00 AM), https://www.npr.org/sections/shots-health-news/2025/04/05/g-s1-58312/hhs-layoffs-rif-cdc-fda-nih. He told reporters, "We talked about this from the beginning, [which] is we're going to do 80% cuts, but 20% of those are going to have to be reinstalled, because we'll make mistakes." *Id.*

62.     On April 4, 2025, the IRS began implementing a RIF, which it characterized as in accordance with the Workforce Optimization Initiative outlined in the Order. The RIF affects multiple offices and job categories, beginning with the Office of Civil Rights and Compliance (formerly the Office of Equity, Diversity, and Inclusion).

63.     The Treasury Department told OPM that it expects to cut up to half of IRS enforcement personnel and reduce staffing by up to 20% across other Treasury components as part of a major agency reorganization. Jory Heckman and Drew Friedman, Federal News Network (Apr. 9, 2025, 5:43 PM), *Treasury Plans to Cut Up to 50% of IRS Enforcement Staff, 20% of Other Components*, https://federalnewsnetwork.com/reorganization/2025/04/treasury-plans-to-cut-up-to-50-of-irs-enforcement-staff-20-of-other-components/.

64.     The IRS plans to cut up to 40% of its workforce, going from 102,000 employees to approximately 60,000 to 70,000 employees. Jory Heckman, *IRS Outlines Plan to Cut up to 40% of Workforce, As Tax Filing Season Ends*, Federal

News Network (Apr. 15, 2025 12:54PM),

https://federalnewsnetwork.com/workforce/2025/04/irs-outlines-plan-to-cut-up-to-40-of-workforce-as-tax-filing-season-ends/ (Apr. 15, 2025 12:54PM).

65.    These mass firings of tens of thousands of employees, representing substantial percentages of the agency defendants' workforces, demonstrate that agencies are following the Executive Order's sweeping commands, including to terminate employees "not typically designated as essential during a lapse in appropriations."

## C.    Mass Firings of Probationary Employees

66.    In addition to the mass firing of nonessential employees that the President has directed, OPM is coordinating and directing the mass firing of probationary employees across the government, including at each Defendant agency where NTEU represents employees. NTEU and NFFE have lost dues-paying members as part of these mass firings of probationary employees.

67.    On January 20, OPM directed all federal departments and agencies to provide it with a list of all probationary employees within the next four days. OPM Guidance on Probationary Periods, Administrative Leave and Details, OPM.gov, https://chcoc.gov/sites/default/files/Guidance%20on%20Probationary%20Periods%2C%20Administrative%20Leave%20and%20Details%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%20FINAL.pdf. OPM further asked the heads of all federal departments and agencies to "promptly determine whether those employees should be retained." *Id.*

68.    By February 5 at noon, each federal department and agency had to send OPM its determination of which probationary employees, if any, should be

retained. Specifically, "OPM asked agencies to submit their lists and gave them a 200-character limit to explain why the employee should stay in government." Jason Miller, *OPM Asks Agencies to Justify Keeping Probationary Employees*, Federal News Network.com (Feb. 4, 2025, 6:34PM), https://federalnewsnetwork.com/workforce/2025/02/opm-asks-agencies-to-justify-keeping-probationary-employees.

69.     According to a source, "while OPM didn't specifically say employees would be fired if agencies indicated they did not want to retain them, there was an underlying message that these employees were on their way out." *Id.*

70.     There are an estimated 220,000 probationary employees in the federal government. *See id.* A mass firing of nearly all probationary employees would thus wipe out about 10% of the federal civilian workforce.

71.     NTEU represents an estimated 15,000 probationary employees at the IRS alone, which has ramped up its hiring under the IRA. NTEU estimates that it represents over 1,000 probationary employees at HHS.

72.     NFFE, IAM, and IFPTE also represent probationary employees. NFFE represents almost 6,000 probationary employees at the U.S. Forest Service, roughly 1,500 probationary employees at the VA, and about 900 probationary employees at the DoD. Roughly ten percent of the employees in IAM's bargaining units across DoD are probationary. IFPTE represents probationary employees at Goddard Space Flight Center and within the Naval Sea Systems Command.

73.     On January 20, 2025, Acting Director of OPM, Defendant Charles Ezell, issued a memo to department and agency heads directing them to identify all employees serving probationary periods by January 24, and to "promptly determine whether those employees should be retained at the agency."

74.     On the night of February 11, 2025, the CFPB sent its probationary employees a notice of termination that ended their federal employment.

75.     On February 14, 2025, OPM sent an email to federal agencies' chief human capital officers and their deputies, stating, "We have asked that you separate probationary employees that you have not identified as mission-critical no later than end of the day Monday, 2/17." OPM attached a template separation letter.

76.      On or about February 14, 2025, HHS sent termination notices to hundreds of probationary and trial employees. These terminations were temporarily paused by court decisions.

77.     Around May 8, 2025, HHS sent termination notices to probationary employees again.

78.     In February 2025, the IRS sent termination notices to 7,315 probationary employees. After a series of court decisions, those employees were reinstated, but were placed on administrative leave.

79.     In a February 21 IRS "town hall," IRS Chief Human Capital Officer Traci DiMartini stated that the termination of probationary employees "was directed from OPM," and that the termination letters "were written by OPM."

80.     According to a sworn declaration from DiMartini filed in the District of Maryland, the IRS did not review or consider the actual job performance or conduct of any IRS probationary employee when issuing the termination notices. She said, "Practically speaking, it would take weeks or months to evaluate the job performance of 6,700 probationary employees."

81.     On or about February 17, 2025, the FDIC sent termination notices to many probationary and trial employees, removing them from federal service effective February 19, 2025.

82.     NTEU has at least 7,000 probationary or trial dues-paying members who have been terminated.

### D.     The Bullying of Federal Workers to Quit Their Jobs Through OPM's "Deferred Resignation Program"

83.     On January 28, OPM sent the approximately 2.2 million federal civil employees an email designed to threaten them into resigning their positions. OPM invited employees to opt into a deferred resignation program and terminate their federal employment on September 30. At the same time, OPM cautioned these employees that "the majority of federal agencies are likely to be downsized through restructurings, realignments, and reductions in force." Fork in the Road, OPM.gov, https://www.opm.gov/fork.

84.     After OPM's initial communication to the federal civilian workforce, the Executive Branch, including OPM, has continued to ramp up the pressure on the federal civilian workforce to resign.

85. For example, "[i]n an email to some federal employees . . . a commissioner at a department overseen by Musk's allies warned of the impending pain if they don't leave." Holly Otterbein, *Musk Aims to Hobble Federal Workers Ahead of 'Buyout' Deadline*," Politico.com (Feb. 6, 2025, 5:00AM), https://www.politico.com/news/2025/02/06/federal-workers-musk-buyout-fears-00202768. That manager told employees "that 'we won't need staff in certain areas of the country' and 'will be cutting redundant business functions and associated staffing.' He said 'we're also considering how we can utilize AI in our portfolios.'" *Id.*

86. According to the White House, as of February 12, at least 75,000 employees—roughly 4% of the federal civilian workforce—opted into OPM's deferred resignation program. Eric Katz*, Employees Swarm to Second "Deferred Resignation" Offer*, Government Executive (Apr. 11, 2025), https://www.govexec.com/workforce/2025/04/employees-swarm-second-deferred-resignation-offer-though-some-are-receiving-unexpected-responses/404504/.

87. The administration had hoped that 5-10% of the federal civilian workforce would resign through OPM's program. Garrett Haake & Megan Lebowitz, *White House Says About 75K Federal Workers Accepted 'Deferred Resignation' Offer*, NBC News (Feb. 12, 2025 10:00PM), https://www.nbcnews.com/politics/white-house/white-house-says-75000-accepted-federal-buyout-trump-rcna191971.

88. OPM, in a social media post, confirmed that its deferred resignation program is just one part of its "major restructuring" of the "federal workforce."

89.     NTEU members at IRS and HHS signed up for OPM's deferred resignation program. NFFE, IAM and IFPTE have also had employees in their bargaining units sign up for the deferred resignation program. It is substantially likely that the overall percentage of the Unions' members who sign up for the program will match the percentage of the federal civilian workforce that signs up.

90.     As of March 2025, 4,128 IRS employees were approved to accept the deferred resignation program, and an additional 522 employees were pending approval.

91.     In April 2025, many agencies, including the Treasury Department and the VA, have given employees another chance to accept a "deferred resignation" offer—"DRP 2.0."

92.     Over 23,000 IRS employees applied for the second DRP, and 13,124 were approved as of April 22, 2025.

93.     Staff at Interior has "seen huge swaths of the workforce opt into 'DRP 2.'" Eric Katz*, Employees Swarm to Second "Deferred Resignation" Offer*, Government Executive (Apr. 11, 2025), https://www.govexec.com/workforce/2025/04/employees-swarm-second-deferred-resignation-offer-though-some-are-receiving-unexpected-responses/404504.

94.     More than 3,500 employees have accepted the DRP 2 offer at the U.S. Forest Service (USDA's largest component). *Id.*

### III.    The Effect of the Attempts to Dismantle Federal Agencies on NTEU and the Other Unions

95.    The Unions bring this action on behalf of themselves because the Executive actions described above will end the federal employment of tens of thousands of their members. That will hurt the Unions financially and in terms of their influence at the bargaining table.

96.    Employees within the Unions' bargaining units can choose to voluntarily join and pay dues. Most of those members have elected to have their dues withheld from their pay and automatically paid to the Unions, as provided for under 5 U.S.C. § 7115(a).

97.    Congress has required federal sector unions to represent the interests of all employees in its bargaining units, not just the employees who choose to pay dues and become members. 5 U.S.C. § 7114(a)(1).

### A.    **Financial Harm**

98.    NTEU will be financially harmed because it will immediately lose dues revenue from members who are fired because they are nonessential or probationary. Even if these individuals remain NTEU members as former federal employees after they are fired, NTEU will lose money because their dues rates will be significantly reduced.

99.    NTEU has thousands of dues-paying members who would be considered nonessential during a lapse of appropriations within IRS and HHS alone. IRS has approximately 31,220 dues-paying members who would be considered nonessential during tax filing season (January 1 through April 30) and

39,141 dues-paying members who would be considered nonessential outside of tax filing season. HHS has approximately 2,578 dues-paying members who would be considered nonessential. It has many more dues-paying members in the other thirty-five agencies where NTEU is the exclusive representative.

100.    NTEU has thousands of dues-paying members who are probationary employees at IRS, HHS, and the CFPB. It has many more dues-paying members who are probationary employees in the other thirty-four agencies where NTEU is the exclusive representative.

101.    Dues from members constitute the majority of NTEU's annual budget. If all employees previously designated as nonessential during the lapse in appropriations were terminated, along with an unknown number of employees who work in agency components that might be suspended or closed at some point, NTEU will immediately lose millions of dollars of revenue.

102.    The loss of these dues will adversely affect NTEU's ability to carry out its mission in many ways. For example, NTEU will have less money available for staff to assist employees with grievances; to file litigation on employees' behalf; to advocate for employees on Capitol Hill; and to negotiate collective bargaining agreements.

103.    Even if NTEU prevails in this litigation and employees terminated under a RIF were rehired at some later point, there is no mechanism to force former employees to pay back dues for a period in which they did not have union representation.

104.    NFFE, IAM, and IFPTE will face the same types of financial harm—lost dues revenue—when their dues paying members who are nonessential or probationary are fired.

105.    OPM's deferred resignation program add to NTEU's financial harm. NTEU members, including those at IRS and HHS, have opted into the program. Even if these employees remain NTEU members after their resignations are effective on September 30, NTEU will lose money because retiree dues rates are significantly reduced.

106.    OPM's and agencies' deferred resignation programs similarly add to the financial harm that NFFE and IFPTE are substantially likely to suffer from the early retirement of dues-paying members.

B.    **Loss of Bargaining Power**

107.    The Unions' bargaining power will be diminished through their loss of bargaining unit employees and their loss of members as a result of the Executive actions described above.

108.    The strength and influence of any union correlate directly with the size of its membership. NTEU, for example, is the nation's largest independent federal sector union and the second largest federal sector union overall. NTEU regularly tells its employees, agencies, Congress, and the public that it represents approximately 150,000 employees in thirty-seven agencies across the government.

109.    Because the mass firing of nonessential, probationary, and other employees will substantially reduce the number of employees that NTEU

represents, the union's influence in negotiating agreements with other agencies or lobbying Congress for benefits that help federal employees will be diminished.

110.    The bargaining unit employees that NTEU represents will see that NTEU has a more limited capacity to advocate for them. That loss of status will likewise affect how federal agency management at IRS, HHS, the CFPB, and other agencies perceive and deal with NTEU going forward.

111.    OPM's deferred resignation program compounds NTEU's loss of bargaining power. NTEU members, including those at IRS and HHS, who have opted into the program will become, on September 30, former federal employees who will no longer be part of the bargaining units that NTEU represents.

112.    NFFE, IAM, and IFPTE will similarly suffer a loss of status and influence from having fewer employees in their bargaining units as a result of the mass firing of employees and the deferred resignation programs.

## CAUSE OF ACTION

**Count I: The mass firing of employees and the attempt to force resignations across the federal civilian workforce are ultra vires because they violate the separation of powers.**

113.    Plaintiffs reassert the allegations contained in paragraphs 1 through 112 of this complaint as though contained herein.

114.    The mass firing of hundreds of thousands of employees and the coercive effort to get a similar number of federal employees to resign, collectively, were aimed at decimating the federal civilian workforce.

115.    These Executive Branch actions, including those of Defendants, thus violate the separation of powers because they undermine Congress's authority to set and fund the missions of federal agencies.

**Count II: The mass firing of employees and the attempt to force resignations at the IRS are ultra vires because they conflict with the Inflation Reduction Act.**

116.    Plaintiffs reassert the allegations contained in paragraphs 1 through 112 of this complaint as though contained herein.

117.    The mass firing of IRS employees and the coercive effort to get IRS employees to resign, collectively, conflicts with Congress's mandate in the IRA to expand and fortify the IRS to improve taxpayer services.

**Count III: OPM and OMB's implementation of Executive Order No. 14210 in the Memo and their "approval" of ARRPs pursuant to the Memo are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(C).**

118.    Plaintiffs reassert the allegations contained in paragraphs 1 through 112 of this complaint as though contained herein.

119.    OPM and OMB's issuance of the Memo and approval of ARRPs pursuant to the Memo constitute final agency action under the APA.

120.    OPM and OMB lack statutory authority to direct agencies to reorganize and conduct mass firings of employees, or to approve agencies' plans to do so, as decreed their Memo.

**Count IV: OPM and OMB's implementation of Executive Order No. 14210 in the Memo and their "approval" of ARRPs pursuant to the Memo are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2)(A).**

121.    Plaintiffs reassert the allegations contained in paragraphs 1 through 112 of this complaint as though contained herein.

122.    OPM and OMB's direction to agencies to conduct RIFs under the parameters of the Memo, including to base RIFs in part on whether employees are "not typically designated as essential during a lapse in appropriations," is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

**Count V: The agency Defendants' implementation of their ARRPs is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2)(A).**

123.    Plaintiffs reassert the allegations contained in paragraphs 1 through 112 of this complaint as though contained herein.

124.    On information and belief, each of the agency Defendants has created and submitted for OPM and OMB approval an ARRP pursuant to the Memo.

125.    The agency Defendants' ARRPs and the execution of those ARRPs constitute final agency action under the APA.

126.    The agency Defendants' ARRPs and the execution of those ARRPs make hasty, sweeping cuts to agency staff that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs request judgment against Defendants:

A.    Declaring that the mass firing of nonessential, probationary, and other employees and the Administration's deferred resignation programs, collectively, are unlawful;

B.      Enjoining the implementation of Section 3(c) of Executive Order No. 14210, Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative;

C.      Enjoining OPM and OMB's implementation of the Memo and their approval of agencies' ARRPs pursuant to the memo;

D.      Enjoining the agency Defendants' implementation of their ARRPs;

E.      Enjoining the implementation of OPM's directive to terminate probationary employees;

F.      Enjoining Defendants from extending, expanding, or replicating its deferred resignation programs;

G.      Ordering Defendants to pay reasonable attorneys' fees and costs; and

H.      Ordering such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Julie M. Wilson
JULIE M. WILSON
General Counsel
D.C. Bar No. 482946

/s/ Paras N. Shah
PARAS N. SHAH
Deputy General Counsel
D.C. Bar No. 983881

/s/ Allison C. Giles
ALLISON C. GILES
Assistant Counsel
D.C. Bar No. 439705

/s/ Jessica Horne
JESSICA HORNE
Assistant Counsel
D.C. Bar No. 1029732

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street, N.W., Suite 1000
Washington, D.C. 20001
Tel: (202) 572-5500
Fax: (202) 572-5645
julie.wilson@nteu.org
paras.shah@nteu.org
allie.giles@nteu.org
jessica.horne@nteu.org

Attorneys for Plaintiff NTEU

/s/ Yvette M. Piacsek
YVETTE M. PIACSEK
General Counsel
D.C. Bar No. 980302

NATIONAL FEDERATION OF FEDERAL
EMPLOYEES, IAM, AFL-CIO
1225 New York Avenue N.W., Suite 450
Washington, D.C. 20005
Tel: 202-216-4428
ypiacsek@nffe.org

Attorney for Plaintiff NFFE


/s/ Carla M. Siegel
CARLA M. SIEGEL
General Counsel
D.C. Bar No. 449953

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO
9000 Machinists Place
Upper Marlboro, MD 20772
Tel: 301-967-4510
csiegel@iamaw.org

Attorney for Plaintiff IAM

/s/ Teresa Ellis
TERESA ELLIS (admission pending)
General Counsel
D.C. Bar No. 495855

INTERNATIONAL FEDERATION OF
PROFESSIONAL & TECHNICAL
ENGINEERS, AFL-CIO
513 C Street N.E.
Washington, D.C. 20002
Tel: (202) 239-4880
tellis@ifpte.org

May 27, 2025                    Attorney for Plaintiff IFPTE