## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:25-cv-00420 |
| DONALD J. TRUMP, et al., | ) ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND

Defendants oppose Plaintiffs' motion for leave to amend their First Amended Complaint on grounds of futility and undue delay. Just as Plaintiffs' originally pleaded claims fall outside of district court jurisdiction, as this Court held in denying Plaintiffs' request for temporary and preliminary relief, so to would the new claims they seek leave to add. And Plaintiffs could have asserted their proposed new claims at any time prior to now. They instead waited until after Defendants filed a motion to dismiss. The Court should deny Plaintiffs' request to amend their complaint a second time more than three months after Plaintiffs originally brought suit.

## BACKGROUND

Plaintiffs filed suit on February 12, 2025, then amended their complaint on February 17; their operative First Amended Complaint raises two claims. Count I alleges that Defendants have violated the Constitutional separation of powers by infringing on Congress's Article I authority to fund and shape Executive Branch agencies. Count II alleges that Defendants have violated the Administrative Procedure Act by carrying out RIFs in violation of statutory and regulatory requirements. Pls.' Compl., ECF No. 1; *and* Pls.' First Am. Compl., ECF No. 13. On February 14, Plaintiffs moved for a temporary restraining order. Pls.' TRO Mot., ECF No. 11. Following

expedited briefing and oral argument, the Court denied Plaintiffs' request for both a temporary restraining order and a preliminary injunction on February 20. *See Nat'l Treasury Emps. Union v. Trump (NTEU)*, No. 25-CV-420 (CRC), 2025 WL 561080 (D.D.C. Feb. 20, 2025).

Following a thirty-day extension of Defendants' Rule 12 deadline (to which Plaintiffs consented), *see* Minute Order of April 14, 2024, Defendants moved to dismiss Plaintiffs' First Amended Complaint on May 15. *See* ECF No. 41. The motion raised a number of threshold arguments, including the Court lacked subject matter jurisdiction over Plaintiffs' claims; Plaintiffs' APA claims were unreviewable; and Plaintiffs failed to sufficiently allege a constitutional violation. *See id*.

Less than two weeks later, Plaintiffs moved for leave to amend their complaint a second time. ECF No. 42, Pls.' Leave Mot. Plaintiffs' attached proposed Second Amended Complaint, ECF No. 42-1, Second Am. Compl., contains the following differences:

- Plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) is dropped from the complaint. Second Am. Compl. at 1; *see also* ECF No. 44, Notice of Voluntary Dismissal by UAW.

- Plaintiffs swap several Defendants to reflect leadership changes and add six new Defendants—the directors/chairmen of the Federal Housing Finance Agency, the Commodity Futures Trading Commission, the Federal Trade Commission, the Federal Deposit Insurance Corporation (FDIC), and the Department of the Interior. Second Am. Compl. at 2–3; *see also* Pls.' Leave Mot. at 1.

- Plaintiffs add factual allegations that "[h]istorically, when Presidents have reorganized the executive branch, they have always done so pursuant to

congressional delegations of authority in Reorganizations Acts." Second Am. Compl. ¶¶ 26–29.

- Plaintiffs remove Section I(C) factually explaining RIF procedures, such as establishing "competitive areas" and classifying competing employees on a retention register, from their first amended complaint. *Contrast* First Am. Compl. ¶¶ 28–39 *with* Second Am. Compl. at 11–12.

- Plaintiffs add factual allegations that Defendants OMB and OPM issued a memorandum—*Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative* (Feb. 26, 2025) (Memo), https://www.opm.gov/policy-data-oversight/latest-and-other-highlighted-memos/guidance-on-agency-rif-and-reorganization-plans-requested-by-implementing-the-president-s-department-of-government-efficiency-workforce-optimization-initiative.pdf—directing agency Defendants to create and submit Agency RIF and Reorganization Plans (ARRPs) to OMB and OPM "for review and approval." Second Am. Compl. ¶¶48–50.

- Plaintiffs add factual allegations that Defendant Department of Health and Human Services (HHS) began RIFs on March 27, 2025, "in accordance with President Donald Trump's Executive Order 14210[.]" Second Am. Compl. ¶¶ 54–61.

- Plaintiffs add factual allegations that Defendant Internal Revenue Service (IRS) began RIFs on April 4, 2025, in accordance with Executive Order 14210 (Executive Order). Second Am. Compl. ¶¶62–66.

- Plaintiffs add factual allegations that Defendants HHS, IRS, and FDIC have sent termination notices to probationary employees "at the direction of OPM."  Second Am. Compl. ¶¶ 73–81.

- Plaintiffs add a factual allegation that "NTEU has at least 7,000 probationary or trial-paying members who have been terminated."  Second Am. Compl. ¶ 82.

- Plaintiffs add factual allegations that many agencies have issued another deferred resignation offer and many employees have accepted the offer.  Second Am. Compl. ¶¶90–94.

- Plaintiffs drop Count II from their first amended complaint and add four new counts as follows:

  o Count II:  "mass firings" and the deferred resignation program are ultra vires because they conflict with the Inflation Reduction Act.  Second Am. Compl. ¶¶ 116–117.

  o Count III:  OPM and OMB's implementation of the Executive Order and Memo through their "approval" of ARRPs violate the APA because they exceed statutory authority.  Second Am. Compl. ¶¶ 118–120.

  o Count IV:  OPM and OMB's implementation of the Executive Order and Memo through their "approval" of ARRPs violate the APA because they are arbitrary and capricious.  Second Am. Compl. ¶¶ 121–122.

  o Count V:  the agency Defendants' implementation of their ARRPs violates the APA because they are arbitrary and capricious.  Second Am. Compl. ¶¶123–126.

- Plaintiffs tweak their requested relief to ask the Court to enjoin OPM and OMB from approving the agencies' ARRPs pursuant to the Memo, enjoin the agency Defendants from implementing the ARRPs, and enjoin all Defendants—not just OPM—from replicating or expanding the deferred resignation program.  Second Am. Compl., Request for Relief (C, D, and F).

Plaintiffs assert that their amendments address Defendants' arguments that their claims are neither ripe nor sufficiently concrete to confer standing.  *See* Leave Mot. at 3–4.  They also argue that amendment would not be futile on the basis of three recent district court decisions (two from outside the D.C. Circuit) finding subject-matter jurisdiction over claims somewhat similar to those they seek leave to assert here.  *See id.* at 4 (*citing AFGE v. Trump*, No. 25-cv-03698, 2025 U.S. Dist. LEXIS 89344, at \*\*36-47 (N.D. Cal. May 9, 2025);  *Widakuswara v. Lake*, No. 1:25-CV-1015-RCL, 2025 U.S. Dist. LEXIS 76500, at \*\*29-32 (D.D.C. Apr. 22, 2025), *stay granted on other grounds*, No. 25-5144, 2025 U.S. App. LEXIS 11036 (D.C. Cir. May 3, 2025);  *and AFGE v. OPM*, No. 3:25-cv-01780- WHA, 2025 U.S. Dist. LEXIS 54382, at \*\*6-20 (N.D. Cal. Mar. 24, 2025)).

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after serving it, or within a specified amount of time if the pleading is one to which a responsive pleading is required.  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Under Rule 15(a) of the Federal Rules of Civil Procedure, courts have discretion to decide whether a party may amend a pleading if "justice so requires."  Courts in this district have

emphasized that they will "not automatically grant leave" to a party seeking to amend its pleading. *N. Am. Catholic Educ. Programming Found., Inc. v. Womble, Carlyle, Sandridge & Rice, PLLC*, 887 F. Supp. 2d 78, 85 (D.D.C. 2012); *and Williams v. Ellerbe*, 317 F. Supp. 3d 144, 147 (D.D.C. 2018) (noting that Rule 15(a)'s liberal standard "does not mean that a motion for leave to amend must be granted as a matter of course"). Instead, "the Supreme Court has instructed federal courts to consider the following factors: (1) undue delay; (2) the movant's bad faith or dilatory motive; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of permitting an amendment; and (5) futility of the amendment," *Norris v. Salazar*, 746 F. Supp. 2d 1, 3 (D.D.C. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ARGUMENT

The Court should deny Plaintiffs' motion for futility and undue delay.

### I.    Plaintiffs' proposed amendments are futile because the proposed additional claims and factual allegations would not survive a motion to dismiss.

Plaintiffs' proposed Second Amended Complaint would (1) update factual allegations about the ARRPs, probationary employees, and employee resignations, and (2) add four new claims under the APA and Inflation Reduction Act. *See* Pls.' Mot. Leave at 1–2. Because their amendments would be futile, leave to amend should be denied.

"Where granting a motion to amend would waste time and judicial resources because the complaint must fail, as a matter of law, in light of the record in the case, justice does not require permitting amendment." *Boykin v. Gray*, 895 F. Supp. 2d 199, 204 (D.D.C. 2012), *aff'd* 650 F. App'x 42 (D.C. Cir. 2016) (internal quotations omitted); *see also Virtue v. Int'l Bhd. of Teamsters Ret. & Family Prot. Plan*, 893 F. Supp. 2d 46, 48 (D.D.C. 2012) ("[A]mendment should not be

permitted if it would be futile."). An amendment is futile if it is insufficient under Rule 12(b)(6)'s standard. *Soto v. U.S. Dep't of State*, 244 F. Supp. 3d 207, 208 (D.D.C. 2017) (*citing James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)). An amendment is also futile where it "merely restates the same facts as the original complaint in different terms . . . ." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002).

None of Plaintiffs' proposed new counts can meet that requirement. Proposed Count II alleges "the mass firing of employees and the attempt to force resignations at the IRS are ultra vires because they conflict with the Inflation Reduction Act." Second Am. Compl. at 29. Though Plaintiffs add this as an independent count, they add no new factual allegations, instead restating the same facts nearly verbatim. *Compare* First Am. Compl. ¶¶ 22–27 *with* Second Am. Compl. ¶¶ 30–35. As they did in their First Amended Complaint, Plaintiffs merely continue to cite the IRA "as an example of Congress building up an executive branch agency to facilitate its statutory mission." *Compare* First Am. Compl., Statement of Claims (I)(B) *with* Second Am. Compl., State of Claims (I)(B). Defendants have explained why, notwithstanding the IRA, Plaintiffs' claims failed to pass muster in their motion to dismiss. *See* Defs.' MTD, ECF No 41. Count II, and its supporting factual allegations, does not change that formula.

Proposed Count V alleges that the agency Defendants' implementation of their ARRPs violates the APA because it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" Second Am. Compl. at 30. But the proposed claim does not identify any specific ARRPs, let alone allege how any aspect of any ARRP might violate the relevant agency's organic statutes or otherwise not comply with applicable law. Thus, "the questions of who specifically will suffer harm—and when, how, or why they will suffer it—remain unanswered." *Ctr. for Biological Diversity v. Nishida*, No. CV 21-119 (RDM), 2021 WL 827189, at *1–2 (D.D.C.

Mar. 4, 2021). If Plaintiffs believe they have a basis for challenging specific ARRPs based on facts particular to those ARRPs, they may attempt to challenge those ARRPs (through the review scheme Congress provided). But they are not entitled to a second bite at a virtually government-wide injunction based on speculation that agencies will implement the Executive Order or the Memo in an unlawful fashion.

Proposed Counts III and IV would be futile as well. Plaintiffs cite three recent district court decisions—*AFGE v. Trump*, *AFGE v. OPM*, and *Widakuswara v. Lake*—for the proposition that this action is not channeled by the FLSMRS or the CSRA. *See* Leave Mot. at 4. Plaintiffs thus recast their claims from alleging a violation of RIF statutes, which this court already found to be channeled, 2025 WL 561080, at *5 n. 4 (D.D.C. Feb. 20, 2025), to alleging that OPM and OMB are violating the APA because they are "approving" ARRPs. *Compare* First Am. Compl. ¶¶90–99 (Count II) *with* Second Am. Compl. ¶¶ 116–126 (Counts III–IV). The main issue, then, is whether Plaintiffs' amended claims are nevertheless channeled by the FSLMRS[1] and CSRA.

The answer is yes. The FSLMRS provides that the Federal Labor Relations Authority (FLRA) reviews unfair labor practice complaints and "resolves whether an agency must bargain

---

[1] On March 27, 2025, President Trump issued an Executive Order titled "Exclusions from Federal Labor-Management Relations Programs[,]" Exec. Order No. 14251, 90 Fed. Reg. 14553 (Mar. 27, 2025), excluding certain agencies and subdivisions from the collective-bargaining requirements of the FSLMRS due to "hav[ing] as a primary function intelligence, counterintelligence, investigative, or national security work[.]" Among those agencies were several where NTEU represents employees as their exclusive collective bargaining unit representative. *See Nat'l Treasury Emps. Union v. Trump*, No. CV 25-0935 (PLF), 2025 WL 1218044 (D.D.C. Apr. 28, 2025), at *3. Another court in this district preliminarily enjoined the implementation of EO 14251, *see id.*, but on appeal, the D.C. Circuit issued a stay of the district court's preliminary injunction, holding that NTEU had not shown irreparable harm and that the government, by contrast, would suffer irreparable harm from the preliminary injunction. *Nat'l Treasury Emps. Union v. Donald J. Trump*, No. 25-5157, 2025 WL 1441563, at *3 (D.C. Cir. May 16, 2025). The D.C. Circuit likewise observed that "preserving the President's autonomy under a statute that expressly recognizes his national-security expertise is within the public interest." *Id.*

over a subject, violated the duty to bargain in good faith, or otherwise failed to comply with the Statute." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) (*AFGE v. Trump 2019*) (citing 5 U.S.C. §§ 7105(a)(2)(G), 7116(a), 7118)). The CSRA similarly "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) (citation omitted). This statutory review scheme is "exclusive, even for employees who bring constitutional challenges to federal statutes." *Id*. at 13.

Despite shifting the focus of their claims from violations of RIF regulations to the "approval" of ARRPs, Plaintiffs are still fundamentally making the same claims. For example, Plaintiffs' First Amended Complaint alleges that Defendants "will violate the APA because they will commence RIFs for an improper purpose, without a legally cognizable competitive area, and without complying with employee retention requirements." First Am. Compl. ¶ 99. By comparison, the proposed Second Amended Complaint alleges that "OPM and OMB's direction to agencies to conduct RIFs under the parameters of the Memo, including to base RIFs in part on whether employees are 'not typically designated as essential during a lapse in appropriations,' is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Proposed Second Am. Compl. ¶ 122. In both versions, Plaintiffs are opposing the *way* RIFs are being or will be carried out—in other words, what could be characterized as an alleged *unfair labor practice*. Defendants have already explained why this claim is properly channeled under both the FSLMRS and the CSRA. Merely altering the phrasing of the new Count does not mean that Plaintiffs can escape the comprehensive statutory review scheme Congress enacted. *See Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action").

The statement in the Memo that agencies should submit ARRPs to OMB and OPM for "review and approval" does not change this analysis. That language cannot possibly bear the weight that Plaintiffs assign to it and does not alter the fundamental point that individual agencies (not OPM and OMB) are in charge of crafting and implementing ARRPs as well as making decisions on RIFs. This is clear for at least nine reasons.

First, the Executive Order simply provides agencies with broad guidance and does not dictate specific RIFs. Second, the Executive Order directly states that it shall not "be construed to impair or otherwise affect the authority granted by law to an executive department, agency, or the head thereof." Exec. Order 14210, § 5(a)(i). Third, President Trump has publicly stated that agencies are responsible for developing and implementing RIFs. *See* Reuters, *Trump Tells Cabinet Secretaries They, Not Musk, are in Charge of Staff Cuts* (March 7, 2025), *available at* https://www.reuters.com/world/us/trump-tells-cabinetsecretaries-they-not-musk-are-charge-staff-cuts-2025-03-06/. Fourth, the Memo also contains very broad guidelines, not specific dictates. Fifth, even the Memo's very broad guidance concerning the contents of ARRPs relates only to the *information* to be included in the ARRPs, not what agencies *should do* (to take just one example, Phase 2 ARRPs should include "all reductions" of FTE positions and otherwise, Memo at 5, but a requirement that the agency list all reductions it has chosen does not mean the agency has to make any specific reductions in the first place). Sixth, the Memo states at least five times that agencies should only undertake actions that are consistent with their statutory authority. Memo at 1, 2, 3. Seventh, the Memo repeatedly makes clear that agencies should not undertake any action that would impair service delivery functions. Memo at 2. Eighth, the ARRPs even once finalized, are simply agency planning documents that are distinct from any RIFs themselves. *See* Memo at 7 (explaining before a RIF is implemented and an employee separated from service, there must be a

10

formal RIF notice period of 60 days (or 30 days if the agency obtains an OPM waiver), in which affected employees are issued formal RIF notices, as well as provided appeal rights, career transition assistance, and priority placement options).  And ninth, this argument ignores the roles OMB and OPM play in this context.  "OPM may examine an agency's preparations for reduction in force at any stage."  5 C.F.R. § 351.205.  "When OPM finds that an agency's preparations are contrary to the express provisions or to the spirit and intent of these regulations or that they would result in violation of employee rights or equities, OPM may require appropriate corrective action."  *Id*.  And the Executive Order directed agency heads to submit their reorganization plans to OMB.

Plaintiffs' argument that recent district court decisions show that their proposed amendments would not be futile is unpersuasive.  First, *AFGE v. Trump* and *AFGE v. OPM* are both decisions of the Northern District of California, and thus of no precedential value in this district.  And both decisions' reasoning was particularly flawed because each considered binding precedent within the D.C. Circuit, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump (AFGE v. Trump 2019)*, 929 F.3d 748 (D.C. Cir. 2019), to be unpersuasive or not applicable.  *See AFGE v. Trump*, No. 25-cv-03698-SI, 2025 U.S. Dist. LEXIS 89344, at *43 (N.D. Cal. May 9, 2025) ("the D.C. Circuit's 2019 decision in *AFGE v. Trump* is not particularly helpful to resolving the claims channeling question here."); *AFGE v. United States OPM*, No. C 25-01780 WHA, 2025 U.S. Dist. LEXIS 54382, at *16 (N.D. Cal. Mar. 24, 2025) (finding *AFGE v. Trump 2019* inapplicable since the challenged executive order "sought to constrain how agencies bargained.").  But no matter how it is viewed by one or more district courts outside this Circuit, *AFGE v. Trump 2019* is binding precedent here, and "[t]hose decisions, however, no matter how persuasive, do not grant the court license to disregard D.C. Circuit precedent."  *Liuksila v. Turner*, 351 F. Supp. 3d 166, 184 (D.D.C. 2018).  Furthermore, this Court explicitly relied on *AFGE v. Trump 2019* at the preliminary

injunction stage stating, "[t]he claims here are brought by a union representing federal employees against their federal employers—thus, they are 'federal labor-management relations claims.'" 2025 WL 561080, at *5.  That analysis does not change regardless of whether Plaintiffs allege an agency violation of RIF statutes or an allegedly unlawful OPM/OMB review scheme.

Second, Plaintiffs' only decision from within this district, *Widakuswara*, provides them no support, as the only portion of its holding relevant to Plaintiffs' claims here has been stayed by the D.C. Circuit.  The multiple sets of plaintiffs there challenged actions taken pursuant to Executive Order 14238, which directed the United States Agency for Global Media (USAGM) to reduce the agency to the minimum level of operations required by statue.  *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025);  90 Fed. Reg. 13043.  USAGM placed approximately 1,000 employees on administrative leave, terminated nearly 600 personal-service contractors, and directed its personnel abroad to cease broadcasting, and terminating grants to affiliate networks. 2025 WL 1288817, at *1.  The district court granted the plaintiffs' motion for a preliminary injunction, ordering defendants to: (1) restore all USAGM employees and contractors who were terminated pursuant to the order, (2) restore USAGM grants to two affiliate networks as provided by congressional appropriations, and (3) "restore VOA programming such that USAGM fulfills its statutory mandate that VOA 'serve as a consistently reliable and authoritative source of news[.]'" *Widakuswara v. Lake, No*. 1:25-CV-1015-RCL, 2025 WL 1166400, at * 18, (D.D.C. Apr. 22, 2025) (quoting 22 U.S.C. § 6202(c)).  A motions panel of the D.C. Circuit granted the government's motion for a stay pending appeal as to all but provision (3) of the preliminary injunction on May 3, 2025 (which the government did not seek to stay pending appeal), holding in particular that review of the plaintiffs' personnel-related claims likely fell outside of district court jurisdiction under the CSRA and FSLMRS.  2025 WL 1288817, at *1.

The D.C. Circuit sitting en banc later reversed the stay of portion (2) of the preliminary injunction, related to specific grant terminations. The en banc court rejected a request to stay portion (1) of the injunction, leaving intact the panel's order staying the district court injunction as to the plaintiffs' personnel-related claims. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025), at **1-2. As to the latter, the en banc Circuit expressly denied the plaintiffs' employment-related-relief. Or. Denying Stay, *Widakuswara, et al. v. Lake, et al.*, 25-4144 (D.C. Cir. May 22, 2025); *see also Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025). What is more, the Circuit cited two recent cases disputing Tucker Act jurisdiction over grant terminations, not federal employment action, in the preceding sentence to note this case "raise[d] an important issue[.]" 2025 WL 1521355, at *1 (citing *Am. Bar Ass'n v. U.S. Dep't of Just.*, No. 25-cv-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14, 2025); *S. Educ. Found. v. U.S. Dep't of Educ.*, No. 25-cv-1079 (PLF), 2025 WL 1453047 (D.D.C. May 21, 2025)). Contrary to Plaintiffs, *AFGE v. Trump*, *AFGE v. OPM*, and *Widakuswara v. Lake*, have not changed the legal landscape with respect to the personnel arguments at issue here, and Plaintiffs' claims are still channeled by the FSLMRS and CSRA.

## II.    Plaintiffs Undue Delay in Moving for Leave to Amend Would Prejudice Defendants and Warrants Denial of Leave to Amend.

Plaintiffs' undue delay in seeking to amend their operative complaint constitutes independent reason to deny them leave to amend, particularly because the new factual allegations were reasonably known to Plaintiffs months ago. *See Hollinger-Haye v. Harrison W./Franki-Denys*, 130 F.R.D. 1, 1 (D.D.C. 1990) (denial of leave to amend where "the additional counts were based on facts known to the plaintiff prior to the completion of discovery."). This is especially true when a plaintiff's own actions are the source of delay in seeking to amend its complaint. *See N. Am. Catholic Educ. Programming Found.*, Inc., 887 F. Supp. 2d at 89 ("Justice does not require

this Court to bless plaintiff's attempts to plead first and investigate later."). Such situations support denying a plaintiff's motion to amend because it could have, and should have, sought to timely include the claims rather than delaying unnecessarily. *See Hollinger-Haye*, 130 F.R.D. at 1.

Plaintiffs' new factual allegations mainly stem from the Memo release on February 26, 2025. Plaintiffs have waited three months before amending their complaint to include these new claims, which have been known to them for some time now. For instance, Plaintiffs' allegations as to RIFs at HHS and the IRS range from three months to seven weeks old. Second Am. Compl. ¶¶ 54–65. As to the termination of probationary employees, their new factual allegations range from fourteen to three weeks old. *Id*. ¶¶ 75–85, 90–94. And as to the Deferred Resignation Program, their new allegations are over a month old. *Id*. ¶¶ 90–94.

This delay will prejudice Defendants, who have prepared and filed a motion to dismiss the First Amended Complaint. At no point during the period while Defendants were drafting the motion did Plaintiffs indicate they planned to amend, including when Defendants requested Plaintiffs' position as to a thirty-day extension of their original Rule 12 deadline. Had Plaintiffs done so, perhaps the parties might have been able to work out a schedule reflecting the amendment and avoided a potentially needless dispositive motion. Defendants' plan to file a motion to dismiss was known to Plaintiffs and involved arguments familiar to Plaintiffs from Defendants' opposition to the motion for preliminary injunction. Plaintiffs' motion unnecessarily complicates matters and delays adjudication of the argument advanced in Defendants' motion. Even if the Court does not fully grant Defendants' motion to dismiss, its ruling will inform the parties about the scope of the case and the range of justiciable claims and defenses. An economical and expeditious disposition of Defendants' arguments is not achieved by permitting Plaintiffs to amend their complaint.

**CONCLUSION**

14

Plaintiff's motion should be denied because the proposed amendments if granted would be futile, and the proposed amendments show Plaintiffs' dilatory motives. Therefore, Defendants respectfully request that the Court deny Plaintiff's Motion for Leave to File Second Amended Complaint.

Dated: June 4, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

Christopher Hall
Assistant Branch Director
Federal Programs Branch

/s/ Richard C. Giles
RICHARD C. GILES
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 598-7598
Email: Richard.C.Giles@usdoj.gov

Counsel for Defendants