# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:25-cv-00420 |
| DONALD J. TRUMP, et al., | ) ) ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

I.    This Court Lack Jurisdiction Over Plaintiffs' Claims. ............................ 3

A. Plaintiffs Cannot Bypass Channeling for Their Employment-Related Claims. ..... 3

i. Removals of the Special Counsel and the Chairs of the FLRA and MSPB do not change the channeling analysis .............................................................. 3

ii. The Exclusions Order does not change the channeling analysis. ...................... 8

B. Plaintiffs' Standing Would Be Confined to Their Employment-Related Harms. .. 11

II.    Plaintiffs' Separation of Powers Claim Alleges Violations of Statute. ................. 13

III.    Plaintiffs' APA Claims are Unreviewable by this Court. ................................ 16

A.    The Challenged Actions are not Discrete Agency Actions. ............................ 16

B.    The Challenged Actions are not Final Agency Actions. .................................. 19

C.    Alternative Adequate Remedies are Available. ................................................ 21

D.    Defendants' Actions Are Not Arbitrary and Capricious or Contrary to Law. .... 21

IV.    Plaintiffs' Ultra Vires Claims Fail Because They Cannot Meet the High Standard for Ultra Vires Review. ........................................................................ 23

V.    Plaintiffs' Overbroad Remedies Cannot Be Granted. ........................................... 24

CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

Cases

*AFGE v. Trump*,

    No. 25-cv-03698-SI, 2025 U.S. Dist. LEXIS 98195 (N.D. Cal. May 22, 2025) ...................... 20

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,

    929 F.3d 748 (D.C. Cir. 2019) ........................................................................................ 3, 4, 5

*Am. Foreign Serv. Ass'n v. Trump*,

    No. 1:25-CV-352 (CJN), 2025 WL 2097574 (D.D.C. July 25, 2025) ................................ 1, 13

*Axon Enter., Inc. v. FTC*,

    598 U.S. 175 (2023) ......................................................................................................... 3, 7

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*,

    502 U.S. 32 (1991) ............................................................................................................. 23

*Bennett v. Spear*,

    520 U.S. 154 (1997) ........................................................................................................... 19

*Bennett v. U.S. SEC*,

    844 F.3d 174 (4th Cir. 2016) ............................................................................................... 6

*Changji Esquel Textile Co. v. Raimondo*,

    40 F.4th 716 (D.C. Cir. 2022) ............................................................................................. 23

*City of Los Angeles v. Lyons*,

    461 U.S. 95 (1983) ............................................................................................................. 13

*City of N.Y. v. U.S. Dep't of Def.*,

    913 F.3d 423 (4th Cir. 2019) ............................................................................................... 16

*Dalton v. Specter*,

    511 U.S. 462 (1994) ................................................................................................. 14

*DeVillier v. Texas*,

    601 U.S. 285 (2024) ................................................................................................. 14

*DOJ v. FLRA*,

    981 F.2d 1339 (D.C. Cir. 1993) ............................................................................... 23

*Egbert v. Boule*,

    596 U.S. 482 (2022) ................................................................................................. 14

*Elgin v. Dep't of the Treasury*,

    567 U.S. 1 (2012) ........................................................................................ 7, 8, 9, 15

*Fed. Express Corp. v. U.S. Dep't of Com.*,

    39 F.4th 756 (D.C. Cir. 2022) .................................................................................. 23

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,

    561 U.S. 477 (2010) ........................................................................................ 7, 8, 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,

    528 U.S. 167 (2000) ................................................................................................. 12

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,

    460 F.3d 13 (D.C. Cir. 2006) ............................................................................... 2, 19

*Gill v. Whitford*,

    585 U.S. 48 (2018) ...................................................................................... 11, 13, 23

*Glob. Health Council v. Trump*,

    No. 25-5097, 2025 WL 2326021 (D.C. Cir. Aug. 13, 2025) .................................. 2, 14, 15, 21

*Heckler v. Chaney*,

    470 U.S. 821 (1984)................................................................................................. 21

*Hertz Corp. v. Friend*,

    559 U.S. 77 (2010)................................................................................................... 9

*Inv. Co. Inst. v. CFTC*,

    720 F.3d 370 (D.C. Cir. 2013) ............................................................................... 22

*Lapides v. Board of Regents of the Univ. Sys. of Ga.*,

    535 U.S. 613 (2002)................................................................................................. 9

*Lewis v. Casey*,

    518 U.S. 343 (1996)......................................................................................... 11, 13

*Linda R.S. v. Richard D.*,

    410 U.S. 614 (1973)......................................................................................... 12, 13

*Lujan v. Nat'l Wildlife Fed'n*,

    497 U.S. 871 (1990)......................................................................................... 16, 17

*Markland v. OPM*,

    140 F.3d 1031 (Fed. Cir. 1998) .............................................................................. 22

*McMahon v. New York*,

    No. 24A1203, 2025 U.S. LEXIS 2670 (July 14, 2025) ........................................... 1

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

    463 U.S. 29 (1983)................................................................................................. 22

*Nat'l Treasury Emps. Union v. Trump*,

    770 F. Supp. 3d 1 (D.D.C. 2025) ........................................................................ 1, 3

iv

*Nat'l Treasury Emps. Union v. Trump*,

    780 F. Supp. 3d 237 (D.D.C. 2025) ...................................................................... 4, 5

*Nat'l Treasury Emps. Union v. Vought*,

    No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025)............................... passim

*Norton v. S. Utah Wilderness All.*,

    542 U.S. 55 (2004)...................................................................................................... 16

*NTEU v. Vought*,

    No. 25-5091, 2025 WL 1721068 (D.C. Cir. Apr. 11, 2025)....................................... 18

*NTEU v. Vought*,

    No. 25-5091, 2025 WL 1721136 (D.C. Cir. Apr. 28, 2025)....................................... 18

*Nyunt v. Chairman, Broad. Bd. of Governors*,

    589 F.3d 445 (D.C. Cir. 2009) ................................................................................... 23

*Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*,

    128 F.4th 1089 (9th Cir. 2025)................................................................................... 19

*S. Att'ys Off. S.D. Tex.*,

    57 F.L.R.A. 750 (2002)................................................................................................. 5

*S. Dep't of Air Force, Air Force Materiel Command Robins Air Logistics Ctr. Robins Air Force*

    *Base, Ga.*,

    66 F.L.R.A. 589 (2012)................................................................................................. 5

*Sampson v. Murray*,

    415 U.S. 61 (1974)...................................................................................................... 24

*Scenic America, Inc. v. U.S. Department of Transportation*,

    836 F.3d 42 (D.C. Cir. 2016) ..................................................................................... 19

*Seila Law LLC v. CFPB*,

    591 U.S. 197 (2020)................................................................................................. 8

*Silver State Land, LLC v. Schneider*,

    145 F. Supp. 3d 113 (D.D.C. 2015) ...................................................................... 22

*Steenholdt v. F.A.A.*,

    314 F.3d 633 (D.C. Cir. 2003) .............................................................................. 21

*Thunder Basin Coal Co. v. Reich*,

    510 U.S. 200 (1994)............................................................................................ 6, 7

*Town of Chester v. Laroe Estates, Inc.*,

    581 U.S. 433 (2017)............................................................................................... 11

*TransUnion LLC v. Ramirez*,

    141 S. Ct. 2190 (2021).......................................................................................... 11

*Trump v. AFGE*,

    No. 24A1174, 2025 U.S. LEXIS 2667 (July 8, 2025) ........................................ 20

*Trump v. Am. Fed'n of Gov't Emps.*,

    No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) ................................... 20, 21

*Turgeon v. FLRA*,

    677 F.2d 937 (D.C. Cir. 1982) ............................................................................... 5

*United States v. Arthrex, Inc.*,

    594 U.S. 1 (2021).................................................................................................... 8

*United States v. Fausto*,

    484 U.S. 439 (1988)................................................................................................ 8

*Widakuswara v. Lake,*

    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ......................................... 1, 2, 16, 24

*Widakuswara v. Lake,*

    No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) ..................................................... 17

Statutes

2 U.S.C. §§ 681–688 ................................................................................................................... 15

5 U.S.C. § 704 ................................................................................................................... 1, 2, 20

5 U.S.C. § 5361(7) ...................................................................................................................... 15

5 U.S.C. § 7116(a) ........................................................................................................................ 4

31 U.S.C. § 1341 ........................................................................................................................ 15

U.S. Const. Art. II ...................................................................................................................... 14

Regulations

5 C.F.R. § 351.201(a)(2) ............................................................................................................ 15

5 C.F.R. § 351.205 ................................................................................................................. 18, 21

90 Fed. Reg. 14 ............................................................................................................................. 3

Other Authorities

Exec. Order No. 14,251 ................................................................................................................. 3

## INTRODUCTION

In denying Plaintiffs' motion for a preliminary injunction, the Court held that Plaintiffs' claims must "be brought before the Federal Labor Relations Authority ('FLRA') under the Federal Service Labor-Management Relations Statute [("FSLMRS")][,]" part of the Civil Service Reform Act ("CSRA"). *Nat'l Treasury Emps. Union v. Trump*, 770 F. Supp. 3d 1, 3 (D.D.C. 2025). Since then, numerous courts within the D.C. Circuit have reached the same conclusion on similar facts. *See, e.g.*, *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025), *aff'd in part and vacated in part*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025); *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-CV-352 (CJN), 2025 WL 2097574, at *9 (D.D.C. July 25, 2025); *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *6 (D.C. Cir. Aug. 15, 2025). Plaintiffs attempt to stave off the weight of that authority by claiming "the Administration has methodically been destroying those very channels." Pls. Opp. at 1, ECF No. 61. That is unfounded, but even taking Plaintiffs' assertions at face value, they cannot show that their claims fall within district court jurisdiction.

Separately, Plaintiffs fail to establish Article III standing to assert a broad challenge to employment actions at Defendant Agencies.[1] In their own words, Plaintiffs "'are not challenging individual employment decisions' but rather a broader 'dismantling' of executive agencies," Pls. Opp. at 9 (quoting *McMahon v. New York*, No. 24A1203, 2025 U.S. LEXIS 2670, at *19 (July 14, 2025) (Sotomayor, Kagan, and Jackson, JJ., dissenting to grant of stay pending appeal). *Id.* at 1. But the only way Plaintiffs might be able to show standing to support that sort of claim would be

---

[1] Office of Personnel Management ("OPM"); Office of Management and Budget ("OMB"); the Internal Revenue Service ("IRS"); Department of Health and Human Services ("DHS"); Consumer Financial Protection Bureau ("CFPB"); U.S. Forest Service; Department of Veterans Affairs ("VA"); Department of Defense ("DoD"); National Aeronautics and Space Administration ("NASA"); Federal Housing Finance Agency ("FHA"); Commodity Futures Trading Commission ("CFTC"); Federal Trade Commission ("FTC"); Federal Deposit Insurance Corporation ("FDIC"); and Department of the Interior ("DOI").

to rely on the standing of their members to challenge those individual employment decisions—which would be channeled as this Court previously held.

Even if Plaintiffs could establish jurisdiction over their asserted APA and constitutional claims here, they fail on their merits. Agency action must be "final" to be reviewable under the APA. 5 U.S.C. § 704. But as Plaintiffs themselves note, they are challenging "agencies' ARRP *plans*[.]" Pls. Opp. at 6 (emphasis added). And a plan, almost by definition, cannot be a "final" agency action. *See NTEU v. Vought*, 2025 WL 2371608 at *15 (citing *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 21 (D.C. Cir. 2006)). And even if Defendants' actions were final, Plaintiffs, at most, bring a broad programmatic challenge impermissible under the APA. *See Widakuswara*, 2025 WL 1288817, at *4. Additionally, review under the APA is available only where there is no other adequate remedy in court. 5 U.S.C. § 704. Again, Plaintiffs' allegations of injury are a consequence of employment-related decisions properly channeled into the specific statutory scheme for federal employees. Moreover, the APA claim fails because the challenged conduct was not arbitrary or capricious. Defendants' actions are authorized by statute and historical practice. That Plaintiffs disagree with Defendants' decisions is not a basis for finding them arbitrary and capricious.

Also deficient are Plaintiffs' constitutional claims, which share the same factual basis and derive from their statutory claims. Indeed, the separation-of-powers and ultra vires claims are simply vehicles to dispute Defendants' implementation of statutes. They furnish no independent basis for judgment for Plaintiffs—let alone warrant the overbroad relief they seek, which would impermissibly interfere with Defendants' employment decisions and disrespect the Executive's leading role in managing the federal workforce.

I.     **This Court Lack Jurisdiction Over Plaintiffs' Claims.**

   A.  **Plaintiffs Cannot Bypass Channeling for Their Employment-Related Claims.**

On February 20, 2025, this Court denied Plaintiffs' request for a preliminary injunction, reflecting a determination that Plaintiffs had not established the Court had subject-matter jurisdiction to assess the legality of the personnel actions forming "[t]he crux of the dispute" between the parties. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023); *see NTEU v. Trump*, 770 F. Supp. 3d at 10–16. Plaintiffs claim the "legal and factual landscape have materially changed since that ruling" because "[t]he Administration has deliberately been destroying the very channels" which would provide relief by stripping unions of the option to proceed through administrative channels and firing the heads of independent agencies who are supposed to resolve the employee and union disputes. Pls. Opp. at 10 (citing Exec. Order No. 14,251, Exclusions from Federal Labor-Management Relations Programs, 90 Fed. Reg. 14,553 (Mar. 27, 2025) ("Exclusions Order")). Plaintiffs argue that these combined facts mean that "Congress could not have intended claims to be administratively channeled[.]" *Id*. That is incorrect.

   i.  **Removals of the Special Counsel and the Chairs of the FLRA and MSPB do not change the channeling analysis**

Plaintiffs argue that their claims should not be subject to FSLMRS or CSRA channeling because the FLRA and Merit Systems Protection Board ("MSPB") "are no longer working as Congress intended[]" because "[t]he President has fired the Special Counsel and members of the FLRA and MSPB." Pls. Opp. at 14. Plaintiffs rely on *National Association of Immigration Judges v. Owen* (*NAIJ*), in which a Fourth Circuit panel, without identifying any precedent supporting its conclusion, opined that assessing whether channeling is required under those statutory schemes on

the basis of statutory text, structure, and purpose is not enough, but requires determining as a factual matter whether "the statute functions as Congress intended[.]" 139 F.4th 293, 305 (4th Cir. 2025). This Court should decline to adopt that approach because it conflicts with binding Supreme Court precedent and invites intrusive jurisdictional discovery into a wide variety of personnel cases that Congress plainly intended to be channeled through the CSRA's exclusive procedures.

*First* Plaintiffs' theory of Congressional intent conflicts with controlling Supreme Court precedent. In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), the Supreme Court set forth a two-part framework for determining when a statutory scheme of administrative and judicial review implicitly forecloses parallel district court jurisdiction. First, courts ask whether it is "fairly discernible" from the text, structure, and purpose of the statutory scheme that Congress intended to preclude district court jurisdiction. *Bennett v. U.S. SEC*, 844 F.3d 174, 181 (4th Cir. 2016) (quoting *Thunder Basin*, 510 U.S. at 207). If so, then courts next ask whether the claims at issue are "of the type Congress intended to be reviewed within this statutory structure." *Id.* They answer that question by applying three factors as general guideposts: (1) whether channeling review through the statutory scheme would "foreclose[] all meaningful judicial review," (2) whether a litigant's suit is "wholly collateral" to the statutory scheme, and (3) whether the claims are outside the agency's expertise. *Id.*; *see also Axon Enter., Inc. v. Federal Trade Comm'n*, 598 U.S. 175, 186 (2023) ("The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question.").

In the federal personnel context, *Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012), resolves the first prong of the *Thunder Basin* analysis. There, the Supreme Court held that "employees to whom the CSRA grants administrative and judicial review" may not sue except under the CSRA. *Elgin*, 567 U.S. at 11. And as to "employees to whom the CSRA denies statutory review," the

4

Court explained that "the CSRA's 'elaborate' framework demonstrates Congress' intent to entirely foreclose judicial review." *Id.* In other words, the Court recognized that Congress meant to make the CSRA scheme "exclusive, even for employees who bring constitutional challenges." *Id.* at 13.

The *NAIJ* panel's novel factual inquiry requirement finds no support in *Elgin* or any of the Supreme Court's preclusion jurisprudence. On the contrary, *Thunder Basin* instructs that congressional intent "to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." 510 U.S. at 207 (citation omitted); *see also Elgin*, 567 U.S. at 10 (analyzing "the CSRA's text, structure, and purpose"). So the question of congressional intent depends instead on whether Congress has "create[d] procedures designed to permit agency expertise to be brought to bear on particular problems." *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (quotations omitted). If so, then those procedures "are to be exclusive." *Id.* That legal inquiry into the language and structure of the statute Congress enacted leaves no room for an ad hoc factual analysis of whether the statute is being effectively implemented at a given time following its enactment. *See Axon Enter.*, 598 U.S. at 185.

Furthermore, the Supreme Court and the D.C. Circuit have repeatedly held that the CSRA is designed to be exclusive. *See, e.g.*, *Elgin*, 567 U.S. at 10; *United States v. Fausto*, 484 U.S. 439, 452 (1988); *NTEU v. Vought*, 2025 WL 2371608 at *6. Indeed, the *NAIJ* panel acknowledged that it is "well-established that Congress's intent" is "fairly discernible in the statutory scheme," and that, absent their newly-created functional analysis, resolution of the first step of the *Thunder Basin* test would be "simple," *NAIJ*, 139 F.4th at 305. Thus, in *Fausto*, the Court relied on "the statutory language" and "the structure of the statutory scheme" to conclude that Congress intended to bar excepted service employees from seeking judicial review of adverse employment actions. 484

U.S. at 449. And in *Elgin*, the Court looked to "the CSRA's text, structure, and purpose" to conclude that Congress likewise intended to preclude constitutional challenges to covered actions. The *NAIJ* panel's new factual inquiry into how the scheme Congress established currently functions cannot be reconciled with the straightforward legal test established in these decisions.

The *NAIJ* panel's factual inquiry also disregards separate Supreme Court precedent repeatedly holding that unconstitutional removal protections do not, by themselves, invalidate a comprehensive statutory scheme they are a part of. *See, e.g.*, *Seila Law LLC v. CFPB*, 591 U.S. 197, 234 (2020) (plurality opinion); *United States v. Arthrex, Inc.*, 594 U.S. 1, 24 (2021) (plurality opinion); *Free Enterprise Fund*, 561 U.S. at 508. In other words, even if the tenure protections for the Special Counsel and MSPB are unconstitutional, the CSRA "remains fully operative as a law." *Free Enter. Fund*, 561 U.S. at 509 (quotations omitted). Thus, the key requirement for channeling claims through the administrative process—"procedures 'designed to permit agency expertise to be brought to bear on particular problems'"—would continue to operate. *Id*. at 489.

*Second*, requiring a factual finding that a statute is working as Congress intended invites intrusive jurisdictional discovery in a wide variety of personnel and personnel-adjacent matters that Congress plainly intended to be channeled through the CSRA's exclusive procedures. The *NAIJ* panel's decision would impose significant burdens on the judiciary and federal agencies by opening the door to district court litigation over a variety of personnel claims that fall within the CSRA's scope. Under the *NAIJ* panel's reasoning, any plaintiff who wishes to challenge a covered personnel action in district court may seek to circumvent the CSRA by alleging that the agencies charged with administratively investigating or adjudicating claims are not functioning as intended. 139 F.4th at 306. That could encourage forum shopping and would evade Congress's intent for judicial review of such claims to be governed by a uniform body of law developed by the Federal

Circuit.  *See Elgin*, 567 U.S. at 17.  Moreover, the panel provided no guidance as to how district courts should resolve the subjective factual questions it believed relevant to the underlying inquiry, such as whether the CSRA claims are being "addressed adequately and efficiently." *Id*. at 305; *Cf. Lapides v. Board of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 621 (2002) ("[J]urisdictional rules should be clear.").  The panel also did not explain how district courts should proceed if relevant factual circumstances change during the pendency of ongoing litigation.  The panel's test thus poses a high risk of inconsistent decisions on a jurisdictional issue where uniform rules are necessary. *E.g.*, *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

The need to resolve factual questions the panel identified as relevant to the underlying inquiry would also open the door to motions practice and jurisdictional discovery into the current operations of the MSPB and Office of Special Counsel, which are not part of the underlying action.  Responding to such unprecedented discovery would be extraordinarily burdensome for those agencies, distracting from their statutory mission and further delaying the resolution of administrative claims.

Finally, the *NAIJ* panel's concern that Congress's design would be thwarted if "the Senate-confirmed roles in the MSPB and Special Counsel go unfilled, or if the agencies fail to perform their duties such that covered employees' claims are not adequately processed," 139 F.4th at 305–306, is entirely misplaced.  There have been many periods in which the MSPB lacked a quorum or else had a significant backlog of cases to resolve, and Defendants are not aware of any judicial decision holding that this provided a license for plaintiffs to circumvent the CSRA's exclusive procedures.  For example, the MSPB lacked a quorum from January 7, 2017, until March 3, 2022, and could not adjudicate any petitions for review during that time.  MSPB, *Merit Systems Protection Board Lack of Quorum and the Inherited Inventory: Chart of Cases Decided and Cases*

*Pending*, https://www.mspb.gov/foia/files/HQ_Case_Processing_Data.pdf. But the fact that Congress designed a comprehensive scheme in which the MSPB cannot vote on petitions for review when it lacks a quorum does not excuse plaintiffs from proceeding under the CSRA's procedures. Even while the MSPB lacks a quorum, individuals can continue to file appeals and administrative judges will continue to adjudicate them. Those decisions become final and judicially appealable if neither party files a petition for review with the MSPB. *See* MSPB, *Frequently Asked Questions about the Lack of Quorum Period and Restoration of the Full Board* (Mar. 31, 2025), https://www.mspb.gov/FAQs_Absence_of_Board_Quorum_3_31_2025.pdf. The statutory scheme thus continues to function even during periods when Senate-confirmed positions remain unfilled.

Notably, a panel of the D.C. Circuit has recently reaffirmed the CSRA channels jurisdiction over Plaintiffs claims to the FLRA and MSPB. *NTEU v. Vought*, 2025 WL 2371608 at *5. The panel did not even mention the *NAIJ* panel's novel factual inquiry, instead treading the well-worn outlines of the *Thunder Basin* analysis. *Id*. This Court should give similar treatment to Plaintiffs' argument.

### ii. The Exclusions Order does not change the channeling analysis.

This Court has recognized that the FSLMRS "'provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims.'" *NTEU v. Trump*, 770 F. Supp. 3d at 7 (quoting *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019) (*AFGE v. Trump*)). Plaintiffs claim the President's Exclusions Order abolishes this review process at many Defendant Agencies. Pls. Opp. at 11. But that is not factually correct. The exclusion from collective-bargaining requirements is precisely the type of claim subject to the administrative review scheme. Plaintiffs must therefore

bring that dispute before the FLRA in the form of an unfair-labor-practice charge, or by opposing the jurisdictional dismissal of a separate grievance, with the opportunity for subsequent judicial review in the court of appeals.

The exclusivity of FLRA review is subject only to a limited exception "when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claims are wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *AFGE v. Trump*, 929 F.3d at 755 (alterations and quotation marks omitted). That exception is inapplicable. A finding of preclusion would not foreclose all meaningful judicial review because Plaintiffs can argue to the FLRA that the Defendant Agencies have "refuse[d] to consult or negotiate in good faith with a labor organization as required by" the FSLMRS or have "otherwise fail[ed] or refuse[d] to comply with any provision" of the statute, 5 U.S.C. § 7116(a), and if unsuccessful, can seek review in a circuit court, *see id.* § 7123(a). *See also AFGE v. Trump*, 929 F.3d at 756. This can be done through filing an Unfair Labor Practice ("ULP") complaint or grievance based on the Defendant Agencies' actions taken pursuant to the Exclusions Order, or by challenging the Exclusions Order's validity in the context of already-pending FLRA proceedings, including in response to an order to show cause why the case should not be dismissed for lack of jurisdiction. Likewise, disputes over whether the FSLMRS has been violated are "regularly adjudicated" through that statute's remedial scheme. *Id.* at 760. And plaintiff's claims are within the expertise of the FLRA because they "require interpreting the FSLMRS—the very law that the FLRA is charged with administering and interpreting." *Id.* at 760-761.

Plaintiffs cite one district court which concluded it had jurisdiction over an otherwise channeled claim because the Exclusions Order exempted the agencies at issue from the FSLMRS, making FLRA review unavailable. Pls. Opp. at 11 (citing *Nat'l Treasury Emps. Union v. Trump*,

780 F. Supp. 3d 237, 249 (D.D.C. 2025)). There, the district court predicted that, had NTEU sought relief from the FLRA, the FLRA would have dismissed for lack of jurisdiction in light of the Exclusions Order. *Id*. at 249–251. But the district court cited no FLRA decision holding that it lacks jurisdiction to consider a union's challenge to the validity of the Exclusions Order. *See id*. at 250 (citing *U.S. Att'ys Off. S.D. Tex.*, 57 F.L.R.A. 750 (2002) as an example where the FLRA dismissed a challenge for lack of jurisdiction due to a similar executive order excluding participation in the FSLMRS). This circular logic assumes the validity of the very order that NTEU contends is invalid (and which the district court proceeded to enjoin). Even if the FLRA concludes it lacks jurisdiction, a circuit court could review that jurisdictional ruling (effectively bringing up the merits)—and could review claims the FLRA could not. *See AFGE*, 929 F.3d at 758-759 ("[W]e may review the unions' broad statutory and constitutional claims on appeal from an FLRA proceeding even if the FLRA cannot.").

Plaintiffs rely on *Turgeon v. FLRA*, Pls. Opp. at 12, to argue that a finding of preclusion would foreclose all meaningful review, as the D.C. Circuit previously found that it lacked jurisdiction to review a decision by the FLRA's General Counsel not to issue an ULP complaint because "there is 'no final order of the [FLRA].'" 677 F.2d 937, 939 (D.C. Cir. 1982). While the FLRA General Counsel's decision not to issue a complaint is not a reviewable final order, it stands in stark contrast to the FLRA cases Plaintiffs cite which did result in final appealable orders (dismissal). *See U.S. Dep't of Air Force, Air Force Materiel Command Robins Air Logistics Ctr. Robins Air Force Base, Ga.*, 66 F.L.R.A. 589, 598 (2012); *see also Turgeon*, 677 F.2d at 939 (citing 5 U.S.C. § 7123(a)). Plaintiffs certainly have not established that, if they did raise their claims with the agency, they would not ultimately be resolved with a final order of the FLRA.

**B. Plaintiffs' Standing Would Be Confined to Their Employment-Related Harms.**

Article III courts "do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Instead, a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Under those precedents, Plaintiffs have failed to establish standing to broadly challenge the restructuring of the federal workforce.

Plaintiffs assert five claims—one invoking the separation of powers, one claiming the challenged actions are ultra vires, and three under the APA seeking to enjoin implementation of the Executive Order, the agency Defendants' implementation of their ARRPs, the implementation of the directive to terminate probationary employees, and any replication or expansion of the deferred resignation program. Am. Compl. ¶¶ 113–126, ECF No. 47; *see also id.*, Prayer for Relief (B)–(F). Plaintiffs claim they have standing to pursue relief on these claims based on two harms, the loss of member dues and the loss of bargaining power. Pls. Opp. at 21. But these injuries flow solely from their members' loss of employment, or, in the case of their challenge to agencies' deferred resignation programs, their members' voluntary resignations. In Article III courts, any "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see Gill v. Whitford*, 585 U.S. 48, 72 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."). Thus, any claim to standing is limited to Plaintiffs' employment related claims—which are channeled to the FLRA and MSPB. *See supra* at 3–10; *see also NTEU v. Vought*, 2025 WL 2371608 at *5. They do not have standing to seek to enjoin the government's general management of the federal workforce.

11

Plaintiffs claim "there is a straight line between an injunction" and a remedy to "the Union's harm from diminished dues." Pls. Opp. at 23. But that is simply not true. "Enjoining the implementation" of the Executive Order, deferred resignation programs, or contemplated restructuring or reorganizations referenced in AARPs will not restore Plaintiffs' members to their positions, return lost dues to Plaintiffs, or reaffirm Plaintiffs' bargaining power.

Plaintiffs argue that "a sanction that effectively abates [illegal] conduct and prevents its recurrence provides a form of redress." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185–86 (2000)). But *Friends of the Earth* underscores the weaknesses in Plaintiffs' argument. *Friends of the Earth* dealt with a civil penalty provided in the Clean Water Act which Congress had explicitly determined deterred future violations of the statute. *Id.* The Court gave deference to that determination and opined that such a sanction "provides a form of redress" "[t]o the extent that they encourage defendants to discontinue current violations and deter them from committing future ones[.]" *Id.* at 186. In comparison, Plaintiffs here neither seek a civil penalty nor cite any specific statutory right of action. *See* Pls. Opp. at 25, 31. And Plaintiffs' requested relief does not ask for the Court to deter future allegedly unlawful conduct but to generally oversee the Defendant Agencies' workforce management practices. *See infra* at 16–19.

Plaintiffs' requested relief, thus, is more akin to that sought in *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973). There, the mother of a child born out-of-wedlock filed suit to force a district attorney to bring a criminal prosecution against the absentee father for failure to pay child support. *Id.* at 616. The Court found the relief sought—a prosecution which, if successful, would automatically land the delinquent father in jail for a fixed term with predictably negative effects on his earning power—would scarcely remedy the plaintiff's lack of child support payments. *Id.* at 618. The Court conceded the plaintiff had surely "suffered an injury stemming from the failure

of her child's father to contribute support payments" but explained such a "bare existence of an abstract injury meets only the first half of the standing requirement[,]" *id.*, and that the plaintiff needed to allege "a personal stake in the outcome of the controversy[.]" *Id.* at 616. Here too, Plaintiffs have failed to show they have a personal stake in requesting the Court to oversee Defendants' management of the federal workforce. Plaintiffs' requested injunction would scarcely put members' dues back into Plaintiffs' pockets or increase their bargaining power. "[S]tanding is not dispensed in gross[,]" *Casey*, 518 U.S. at 358 n.6, and just because a plaintiff may have standing to pursue damages (if available) does not mean they have standing to pursue injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983).

But, as another court in this district recently articulated, a court need not decide whether a plaintiff lacks standing to seek any form of relief at all. *Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-CV-352 (CJN), 2025 WL 2097574, at *7 (D.D.C. July 25, 2025). "Instead, it is sufficient to observe that the only cognizable harms the [plaintiffs] assert depend entirely on their members' employment" with the Defendant agencies. *Id.* "Put another way, Plaintiffs' alleged injuries are traceable to the government's personnel actions, and would be redressed by relief that addressed those actions. They would not be redressed at all, meanwhile, by an injunction or declaratory judgment that did something else." *Id.* (citing *Gill v. Whitford*, 585 U.S. 48, 73 (2018)). Therefore, even if the Court finds that Plaintiffs successfully alleged injury-in-fact from a loss of dues and bargaining power, those alleged harms do not grant standing for the sort of wide-ranging injunction Plaintiffs seek.

## II.    Plaintiffs' Separation of Powers Claim Alleges Violations of Statute.

Plaintiffs argue "the Administration's wholesale hobbling of numerous agencies intrudes on Congress's role" thus giving rise to an enforceable constitutional claim. "Constitutional rights

do not typically come with a built-in cause of action to allow for private enforcement in courts. Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." *DeVillier v. Texas*, 601 U.S. 285, 291 (2024) (first citing *Egbert v. Boule*, 596 U.S. 482, 490–91 (2022); and then citing 42 U.S.C. § 1983). In contending that the challenged actions violate the separation of powers, Plaintiffs advance the same argument the Supreme Court rejected in *Dalton v. Specter*, 511 U.S. 462 (1994).

Past broad statements regarding Congress's power to control "the very 'existence of executive offices'" and the President's duty to "'faithfully execute' the laws that Congress creates[,]" Pls. Opp. at 26 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 500 (2010); U.S. Const. Art. II, sec. 3)), Plaintiffs' separation of power claim hinges on whether Defendants acted in accordance with the Antideficiency Act and the Impoundment Control Act. *Id*. But the D.C. Circuit recently rejected arguments identical to those Plaintiffs raise here. In *Glob. Health Council v. Trump*, plaintiffs brought claims under the Constitution alleging violations of the separation of powers and Take Care Clause while simultaneously invoking a cause of action under the APA claiming a violation of the Impoundment Control and Antideficiency Act.[2] No. 25-5097, 2025 WL 2326021 at *3 (D.C. Cir. Aug. 13, 2025). The D.C. Circuit held that, under *Dalton*, plaintiffs may not bring a freestanding constitutional claim if the claim is predicated on underlying statutory violations warning that "plaintiffs would otherwise be able to avoid statutory limits on review by reframing any alleged statutory violation by the President as a constitutional one". *Id*. at *6, 8–9 (citing *Dalton*, 511 U.S. at 474).

---

[2] Another set of plaintiffs to the action brought an additional ultra vires claim. 2025 WL 2326021 at *3.

This same reasoning applies to Plaintiffs.  Plaintiffs claim they are "not arguing that the President . . . is acting 'in excess of'" statutory authority, Pls. Opp. at 31, but that is exactly what they are doing.  *See* Pls. Opp. at 26 ("[Congress] enacts specific laws affecting how the executive branch may expend appropriated funds.  The Antideficiency Act, 31 U.S.C. § 1341, for example, generally prohibits the executive branch from incurring obligations that Congress has not authorized.  As another example, the Impoundment Control Act, 2 U.S.C. §§ 681–688, prevents the Executive from refusing to postpone or withhold the use of appropriated funds."); *id*. ("Historically, Presidential reorganizations have always [reorganized the executive branch] pursuant to congressional delegations of authority in Reorganization Acts."); *id*. at 31 ("The Administration Has Acted Ultra Vires by Slashing the IRS in Contravention of the Inflation Reduction Act").  The core of Plaintiffs' Counts I and II are statutory in nature and, without a corresponding statutory cause of action (which Plaintiffs have never alleged), Plaintiffs lack a freestanding constitutional claim.  *Glob. Health Council*, 2025 WL 2326021 at *9.

Additionally, Plaintiffs' argument that "reorganizations have always [been done] pursuant to congressional delegations of authority in Reorganization Acts[]" is inapposite.  Plaintiffs do not challenge a reorganization, which generally refers to an agency restructuring rather than the elimination of positions within an existing agency structure.  Plaintiffs challenge the direction to begin preparations for Reductions in Force ("RIFs") through an alleged process of seeking OPM/OMB "approval" of Defendant Agency ARRPs, Am. Compl. at ¶¶ 113–126.  While a RIF can be conducted because of a "reorganization," it can also be conducted for other reasons, such as "lack of work" or "shortage of funds." 5 C.F.R. § 351.201(a)(2); *see, e.g.*, 5 U.S.C. § 5361(7).  In any event, Defendants have already explained the President's inherent authority to direct

agencies to carry out RIFs and offered concrete examples of previous Presidents exercising that authority.  *See* Defs. Mot. at 6, ECF No. 59.

### III.    Plaintiffs' APA Claims are Unreviewable by this Court.

#### A.  The Challenged Actions are not Discrete Agency Actions.

The APA does not provide for general "judicial review of" agency conduct; instead, it allows only for challenges to "circumscribed [and] discrete" actions. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990); *see also City of N.Y. v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (explaining that the "distinction between discrete acts, which are reviewable, and programmatic challenges, which are not, is vital to the APA's conception of the separation of powers" and prevents the judge from being injected into "day-to-day agency management").

Plaintiffs claim they are challenging discrete actions: (1) a memorandum issued on February 26, 2025, instructing agency heads to submit ARRPs to OMB and OPM for approval. Russell T. Vought, Director, OMB, & Charles Ezell, Acting Director, OPM, "Guidance on Agency RIF and Reorganization Plans Requested by *Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative*" (Feb. 26, 2025) https://perma.cc/UZU8-JR6Y ('Workforce Memo'); (2) OMB and OPM approval of ARRPs; and (3) the Defendant Agencies' ARRPs and the execution of plans and actions referenced in those ARRPs.  Pls. Opp. at 35–36.  But the more Plaintiffs try to differentiate these actions from the "broad and undefined programs" Defendants cited, the clearer it becomes that their claims represent a broad-scale programmatic challenge.

Start with the OPM/OMB "approval" of the ARRPs and their execution by the Defendant Agencies.  Plaintiffs describe the actions they seek to enjoin: "identifying employees to terminate

in [] RIFs, issuing RIF notices, placing employees on administrative leave, and terminating them." Pls. Opp at 37. What's characterized as a short list of discrete actions really encompasses "a constellation of [] ongoing actions" including reviewing the needs of the individual agencies, identifying potentially thousands of employees subject to RIFs, reviewing which employees should be separated from federal service, placing employees on administrative leave, and issuing terminations. *NTEU v. Vought*, 2025 WL 2371608, at *13. These actions "cannot be packaged together and 'laid before the courts for wholesale correction under the APA.'" *Widakuswara v. Lake*, 2025 WL 1288817 at *3 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990)).[3] *Id*.

This discreteness problem is compounded by the open-ended nature of the legal duties Plaintiffs seek to enforce. Essentially, Plaintiffs seek an order barring numerous Executive Branch agencies from removing any employees. *See* Am. Compl., Prayer for Relief (D) (seeking to "[e]njoin[] the agency Defendants' implementation of their ARRPs"). But Plaintiffs themselves note they have dropped their claim that the Defendant Agencies were implementing RIFs contrary to regulations. Pls. Opp. at 10 n.8. They also admit the President has "some reorganization authority over the executive branch," albeit, they claim, with Congressional buy-in. Pls. Opp. at 26. So what standard does the Court have to determine whether a statutory violation occurred? And without a judicially manageable standard, an order requiring a Defendant Agency to retain specified levels of employment would run afoul of the prohibition on "judicial direction of even discrete agency action that is not demanded by law." *NTEU v. Vought*, 2025 WL 2371608, at *13 (quotation omitted).

---

[3] The D.C. Circuit sitting *en banc* later reversed the panel stay of provision (2), relating to specific grant terminations, but denied the plaintiffs' request to stay provision (1), thus leaving intact the panel's order staying the preliminary injunction as to the personnel-related claims. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025), at **1-2.

The D.C. Circuit recently explained the difficulties with judicially managing the federal government's hiring and firing practices.  In *NTEU v. Vought*, a district court issued a preliminary injunction requiring the government to, among other things, reinstate all CFPB probationary and term employees who had been fired after February 10; refrain from firing any employee except for cause; to refrain from instituting any work stoppage; and rescind all contract terminations issued after February 10.  774 F. Supp. 3d 1, 85–86 (D.D.C. 2025).  A panel of the D.C. Circuit issued a partial stay that allowed the CFPB to terminate employees or stop work if the agency determined, after a particularized assessment, that the employees or work at issue were unnecessary to the performance of the Bureau's statutory duties.  *NTEU v. Vought*, No. 25-5091, 2025 WL 1721068 (D.C. Cir. Apr. 11, 2025).  Days later, the agency issued RIF notices to more than eighty percent of its workforce after making the individualized assessments required by the partial stay order.  *NTEU v. Vought*, No. 25-5091, 2025 WL 1721136 (D.C. Cir. Apr. 28, 2025).  The district court reissued the preliminary injunction, opining that the defendants could not have made individualized assessments on that timetable.  The D.C. Circuit was thus "presented with a dilemma that proved insoluble: Enjoin specific activity like the termination of agency employees . . . which would restrict a wide range of activity that the agency may lawfully undertake[,]" or "craft a follow-the-law injunction" "embroil[ing] the courts in compliance issues about" how many employees should remain"—a determination that the Judicial Branch is neither authorized nor competent to make." *NTEU v. Vought*, 2025 WL 2371608 at *13.  Accordingly, it denied to stay the preliminary injunction, and instead, vacated it after determining the plaintiffs' claims failed as a matter of law. *Id*. at *21.

Move next to the Workforce Memo.  Plaintiffs claim it is a "rule" in that it implements policy by "requir[ing] agencies to submit Phase 1 and Phase 2 ARRPs by certain dates[.]"  Pls.

Opp. at 38 (citing Workforce Memo at 3–6). But the Workforce Memorandum is inter-agency correspondence which states that agencies should submit Phase 1 ARRPs by March 13 (reports that were already required under the Workforce Executive Order which Plaintiffs do not challenge, Pls. Opp. at 34–35), submit Phase 2 ARRPs by April 14, and sets forth guidance on what those ARRPs should contain, Workforce memo at 3–6, all in-line with OPM's statutory functions. *See* 5 C.F.R. § 351.205. It does not create rights or change law, and the obligations it imposes are little more than setting an informal deadline by which the agencies should respond. *See Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003)

### B. The Challenged Actions are not Final Agency Actions.

Contrary to Plaintiffs' contention (Pls. Opp. 35–38), the challenged actions do not satisfy the two elements of the final agency action requirement—(1) the agency action "must mark the consummation of the agency's decisionmaking process," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). The finality requirement is "interpreted in a pragmatic and flexible manner" that "focus[es] on the practical . . . effects of the agency action." *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1108 (9th Cir. 2025).

Plaintiffs argue the Workforce Memo is a final action because it is a "definite statement of OPM and OMB's position on the steps federal agencies must take to comply with the Workforce Order." Pls. Opp. at 39 (quotations omitted) (cleaned up). This statement, according to Plaintiffs, has an effect on regulated entities (Defendant Agencies) and thus sets legal consequences into motion. *Id.* (citing *Scenic America, Inc. v. U.S. Department of Transportation*, 836 F.3d 42, 56 (D.C. Cir. 2016)). But Plaintiffs' selective citation to *Scenic America* ignores the remainder of that

decision. There, the court found that the plaintiff, a non-profit organization, lacked organizational standing to bring a challenge under the APA because the proposed relief would not redress its claimed injuries. *Id*. at 51–53. The court did find the plaintiff met the requirements of associational standing, *id*. at 55, but Plaintiffs here have explicitly disavowed any associational standing. Pls. Opp. at 24 n.17.[4] And, as explained above, Plaintiffs' standing (if any) is limited to their "pocket-book injury;" not an injunction on the firing practices of the federal government.

As to the OMB/OPM "approvals" and Defendant Agency implementation of ARRPs, Plaintiffs' arguments are even more tenuous. As Defendants explained in their motion to dismiss, Def. Mot. at 16–19, the ARRPs are *plans*. And "agency plans generally are not final because they contemplate 'specific actions implementing the plans.'" *NTEU v. Vought*, 2025 WL 2371608 at *15 (citing *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 21 (D.C. Cir. 2006)). Plaintiffs' opposition concedes this point. *See* Pls. Opp. at 41 ("Once approved, the agencies ARRPs [will] constitute final agency action"). Though Plaintiffs point to a suggestion by another district court regarding OPM and/or OMB's responses to three ARRPs, Pls. Opp. at 41 (quoting *AFGE v. Trump*, No. 25-cv-03698-SI, 2025 U.S. Dist. LEXIS 98195, at *82–83 (N.D. Cal. May 22, 2025) *stayed*, *Trump v. AFGE*, No. 24A1174, 2025 U.S. LEXIS 2667 (July 8, 2025)), that does not change the fact that individual agencies (not OPM and OMB) are in charge of crafting and implementing ARRPs, as well as making decisions on RIFs. *See* Defs. Mot. at 46–47.[5] Thus, any guidance OPM and OMB offer on individual ARRPs necessarily remains predecisional.

---

[4] In any event, associational standing would not exist here, because Plaintiffs individual members could not bring claims or obtain relief outside of the CSRA process. *Elgin*, 567 U.S. at 5.

[5] Defendants contest the factual and legal significance of that evidentiary suggestion by the district court in that matter on multiple grounds. *See, e.g.,* Defs. Mot. to Dismiss at 9–12, *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-cv-03698, ECF No. 216 (N.D. Cal. July 21, 2025).

### C.  Alternative Adequate Remedies are Available.

As previously explained (Defs. Mem. 18–28), Plaintiffs fail to state a valid claim under the APA because the comprehensive, reticulated statutory schemes governing employment-related claims provide an "adequate remedy in a court," precluding their APA claims under 5 U.S.C. § 704.  And, as explained above, nothing should change this Court's application of the specialized statutory scheme.  *Supra* at 3–10.

### D.  Defendants' Actions Are Not Arbitrary and Capricious or Contrary to Law.

As an initial matter, *Trump v. Am. Fed'n of Gov't Emps.*, No. 24A1174, 2025 WL 1873449 (U.S. July 8, 2025) demands the dismissal of Plaintiffs APA merits claims as to the Workforce Memo since it too includes "consistent with applicable law" language.  Pls. Opp. at 46 (quoting OMB/OPM Memo at 1).  As recognized by the Supreme Court, this consistent-with-applicable-law proviso is a lawful way for a President, and his subordinates exercising delegated authority, to exercise his undisputed authority over the federal workforce.  *Id*.  OPM/OMB and the Defendant Agencies' preparation and execution of ARRPs are also in line with the APA.

First, Plaintiffs' claims that the alleged "approval" and implementation of the Defendant Agencies' ARRPs is contrary to law is unfounded.  Congress expressly empowered OPM to promulgate regulations governing RIFs.  The regulations make clear that "OPM may examine an agency's preparations for reduction in force at any stage" and that "[w]hen OPM finds that an agency's preparations are contrary to the express provisions or to the spirit and intent of these regulations or that they would result in violation of employee rights or equities, OPM may require appropriate corrective action."  5 C.F.R. § 351.205.  And, as Defendants previously pointed out, OMB and OPM are not usurping the authority of the Defendant Agencies from planning and carrying out their individual ARRPs.  *See* Def. Mot. at 39–40.

Second, Plaintiffs' scattershot attack alleging that the ARRPs and agencies' alleged implementation of plans identified in them are arbitrary and capricious undercuts their preceding argument that the "ARRPs and their execution [are] not even before the Court." Pls. Opp. at 44 (citing *AFGE*, 2025 WL 1873449 at *2). Furthermore, Plaintiffs' argument seems to directly contradict their previous statement they have dropped their claim "that agencies are implementing RIFs contrary to RIF regulations[.]" Pls. Opp. at 10 n.8. The only way the Court might be able to determine if the execution of ARRPs—which are in any event pre-decisional and deliberative, and thus subject to privilege—is arbitrary and capricious would be to assess them against the RIF regulations. *Steenholdt v. F.A.A.*, 314 F.3d 633, 638 (D.C. Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1984)) ("If no 'judicially manageable standard' exists by which to judge the agency's action, meaningful judicial review is impossible and the courts are without jurisdiction to review that action.").

Fourth, Plaintiffs argue that Defendants did not provide a reasonable explanation for their alleged actions or consider an important aspect of the problem. But the Court's review under the APA is "highly deferential and narrow," *Silver State Land, LLC v. Schneider*, 145 F. Supp. 3d 113, 124 (D.D.C. 2015) (citations omitted), and a court "is not to substitute its judgment for that of the agency," M*otor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Defendants have provided a rational explanation, *see* Workforce Memo at 1, which would be sufficient under the APA's deferential standard were any of this properly subject to APA challenge. That Plaintiffs disagree with anything Defendants have done (or are alleged to have done) is not a basis for finding those alleged actions arbitrary and capricious. *See Inv. Co. Inst. v. CFTC*, 720 F.3d 370, 380 (D.C. Cir. 2013) (rejecting argument that "amounts to nothing more than [a] policy disagreement").

22

Finally, federal law permits agencies to conduct RIFs; Congress has recognized agencies' authority to engage in RIFs since the nineteenth century; and the federal government has repeatedly exercised its authority to conduct RIFs, including in largescale Presidentially-directed RIFs, most recently during the Clinton Administration. *See* Defs. Mot. at 3-5.  And as the Federal Circuit has explained, "[w]e accord an agency wide discretion in conducting a reduction-in-force." *Markland v. OPM*, 140 F.3d 1031, 1033 (Fed. Cir. 1998).

## IV.    Plaintiffs' Ultra Vires Claims Fail Because They Cannot Meet the High Standard for Ultra Vires Review.

Plaintiffs do not engage with Defendants' ultra vires argument.  *Compare* Pls. Opp. at 31–34 *with* Defs. Mot. at 48.  Instead, Plaintiffs argue the President exceeded his authority by "slashing IRS employees" in supposed contravention of the IRA.  Pls. Opp. at 33.  But ultra vires claims are generally limited to circumstances where a plaintiff is completely deprived of a means of vindicating its statutory rights and lacks any "alternative path" for judicial review.  *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 682 (2025); *see also Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022); *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) (ultra vires imposes "demanding standard" because it is based on assumption Congress has not statutorily barred judicial review of agency action).  The strict limitations on non-statutory review are "nearly insurmountable."  *DOJ v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993); *see Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (describing such a claim as "essentially a Hail Mary pass" that "rarely succeeds") (Kavanaugh, Cir. J., for the Court).  Indeed, Plaintiffs must plausibly allege that denial of judicial review would "wholly deprive [them] of a meaningful and adequate means of vindicating" their rights.  *Bd. of Governors*

*of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).  And, as explained above, Plaintiffs here have an adequate means of vindicating their rights through the FSLMRS.

### V.    Plaintiffs' Overbroad Remedies Cannot Be Granted.

Plaintiffs' claims fail for lack of subject-matter jurisdiction and would likewise fail on the merits.  Nevertheless, Plaintiffs insist the Court should not dismiss their claims because they "are challenging the cumulative effect of three broad Administration actions[.]"  Pls. Opp. at 1–2.  But were the Court to find any deficiency in the reasons Defendants have articulated for their conduct under the APA or on Plaintiffs' parallel constitutional claims, the proper course would be to direct the agencies to more fully explain that conduct, not to invalidate any of their actions—let alone to direct them, as Plaintiffs demand a reversal of federal government employment policy. Constitutional and equitable principles ignored by Plaintiffs require that the extraordinary injunction they seek be no broader than necessary to accomplish the remedial function. *Cf. Gill v. Whitford*, 585 U.S. 48, 73 (2018).

In demanding a structural injunction that would massively reconfigure Defendant Agency operations to their tastes without any legitimate legal basis, Plaintiffs ignore not only the equitable limitations on injunctions concerning federal employee relations, *cf. Sampson v. Murray*, 415 U.S. 61, 84 (1974) (emphasizing "the general [un]availability of preliminary injunctions in Government personnel cases"), but also the separation of powers principles that Plaintiffs themselves invoke. *See Widakuswara*, 2025 WL 1288817, at *5 (staying preliminary injunction pending appeal, where, by "requiring the restoration of all employees and contractors," the preliminary injunction "interferes with" the "important responsibility" to "maintain[] control over personnel matters"). Any preliminary injunction would therefore be improper.

**CONCLUSION**

For these reasons, the Court should grant Defendants' motion to dismiss and dismiss this case in its entirety.

Dated: August 29, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER HALL
Assistant Branch Director
Federal Programs Branch

*/s/ Richard C. Giles*
RICHARD C. GILES
Trial Attorney (WY Bar No. 8-7222)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
(202) 616-8482
Richard.C.Giles@usdoj.gov

*Counsel for Federal Defendants*